M. WAYNE SANDS, Plaintiff, v. J.I. CASE COMPANY, Defendant and Third-Party Plaintiff-Appellee (Illinois Power Company, Third-Party Defendant; McCartin McAuliffe, Third-Party Defendant-Appellant).

Fourth District   No. 4—91—0975

Opinion filed December 23, 1992.

Robert A. Hoffman and Howard W. Small, both of Thomas, Mamer & Haughey, of Champaign, for appellant.

Thomas J. Andrews and Charles P. Rantis, both of Johnson & Bell, Ltd., of Chicago (Thomas H. Fegan and Mindy Kallus, of counsel), for appellee.

JUSTICE KNECHT delivered the opinion of the court:

J.I. Case Company (Case), the defendant in a products liability action instituted by M. Wayne Sands (Sands), filed a third-party complaint for contribution against McCartin McAuliffe (McCartin) and Illinois Power Company. Following Case's settlement of the products liability action, a jury verdict on the contribution claim found Illinois Power not liable for Sands' injuries, and assessed 35% of the damages to McCartin and the remainder to Case. McCartin appeals from denial of its motion for a directed verdict and post-trial motions for judgment *n.o.v.* and for reduction in the judgment amount, alleging (1) Case failed to prove it was a tortfeasor so as to entitle it to contribution, (2) the court erred in refusing to strike certain trial testimony of Case's expert witness, (3) the court improperly denied its motion for a continuance, and (4) the present value of future medical benefits is not properly part of its workers' compensation liability.

On March 9, 1982, Sands, an employee of McCartin, suffered an amputation of his arm from entanglement with a hydra-borer attachment while operating a trencher manufactured by Case. Sands brought a products liability action against Case alleging that the trencher was unreasonably dangerous because it lacked (1) proper guards to prevent users from becoming entangled with trencher parts, (2) an automatic shut-off device to stop the boring rods from functioning when the operator was not at the control panel, and (3) adequate warnings of the dangers

associated with the boring attachment. Contemporaneous with its answer denying liability, Case filed a third-party action against McCartin and Illinois Power seeking contribution pursuant to the Joint Tortfeasor Contribution Act (Act) (Ill. Rev. Stat. 1991, ch. 70, pars. 300 through 305).

On April 15, 1991, the date scheduled for trial, Sands entered into a settlement agreement with Case and executed a release in consideration of $575,000. Pursuant to the terms of settlement Sands released Case from any claims arising out of the accident, and Illinois Power and McCartin, the third-party defendants in Case's action for contribution, were also released. The trial court dismissed the action between Sands and Case in light of the settlement agreement, denied McCartin's oral motion for a continuance, and directed the parties to the contribution action to proceed to trial.

At trial Case introduced evidence in support of its contribution claim, including the amount of settlement paid Sands, and facts showing McCartin's negligence was a proximate cause of Sands' injury. For example, testimony was presented that McCartin allowed machine operators to use their hands to guide the boring rods without warning of the dangers of this practice and failed to provide training or a safety manual for use of the trencher and attachment. Case also introduced evidence from which the jury could reasonably have concluded that the trencher was unreasonably dangerous: e.g., (1) the owner warranty registration card indicated the Case manual without warnings on hydra-boring was shipped to Illinois Power with the trencher, (2) the trencher did not have a safety switch, and (3) Case sold guide anchors to purchasers as optional equipment. In addition, Case's products claims manager testified that 11 accidents involving the use of the hydra-borer attachment had been reported, all involving entanglement by the injured party with a boring rod. Based on his analysis of the facts in the Sands lawsuit, the seriousness of the injury, and the fact Case had lost lawsuits involving entanglements with boring rods in the past, he concluded liability in the Sands lawsuit was reasonably anticipated and approved the settlement.

The jury returned a verdict in favor of Case, finding Illinois Power not liable and McCartin 35% at fault. The trial court found that pursuant to the supreme court's decision in *Kotecki v. Cyclops Welding Corp.* (1991), 146 Ill. 2d 155, 585 N.E.2d 1023, McCartin's liability for contribution was limited to the extent of its workers' compensation liability to Sands. The trial court concluded this liability was not, however, limited to the $176,283.54 already paid to Sands as of the date of settlement, but included the present value of future medical benefits, stipulated by

the parties to be in excess of $24,966.46. The contribution judgment due Case from McCartin was thereafter determined to be $201,250.

McCartin first argues that the trial court's denial of its motions for directed verdict and judgment *n.o.v.* was against the manifest weight of the evidence (see *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504; *Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 309, 356 N.E.2d 32, 35) because Case failed to submit evidence to prove it was a tortfeasor. McCartin asserts that absent such proof Case is not entitled to contribution under the Act.

■ Section 2(b) of the Act provides "[t]he right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability." (Ill. Rev. Stat. 1991, ch. 70, par. 302(b).) McCartin interprets this language as imposing a burden of proof on Case as to its own liability, citing *Victory Memorial Hospital Association v. Schmidt, Garden & Erickson* (1987), 158 Ill. App. 3d 931, 935, 511 N.E.2d 953, 956, wherein the court stated a plaintiff in contribution "must plead and offer evidence of the amount he paid to the injured party, along with evidence of the joint tortfeasors' fault, so the fact finder has a basis for determining what, if any, amount was paid by plaintiff over and above his fair share of the joint liability." McCartin contends the only tortfeasors there were the contribution plaintiff and one remaining contribution defendant. McCartin also cites section 886A, comment *e*, of the Restatement (Second) of Torts, which provides "[t]he burden of proof is upon the person seeking contribution to establish both his own liability and that of the contribution defendant." (Restatement (Second) of Torts §886A, Comment *e*, at 339 (1979).) McCartin acknowledges, however, no Illinois court has expressly imposed such a burden of proof on the plaintiff in a contribution action.

■ While the Act refers to a party seeking contribution as a "tortfeasor," it also characterizes such a plaintiff as one "subject to liability in tort." (Ill. Rev. Stat. 1991, ch. 70, pars. 302(a), 304.) The issues and burden of proof jury instructions applicable to a contribution claim following settlement provide that plaintiff show payment was made in reasonable anticipation of liability. See Illinois Pattern Jury Instructions, Civil, Nos. 600.09, 600.10 (3d ed. 1992) (hereinafter IPI Civil 3d).

In *St. Paul Fire & Marine Insurance Co. v. Michelin Tire Corp.* (1973), 12 Ill. App. 3d 165, 169, 298 N.E.2d 289, 292, the defendant manufacturer in an indemnity action argued that the plaintiff insurer, which had settled with several decedents' estates in a products liability action, had the burden of proving its insured was liable to the decedents' estates. In rejecting this contention the court found, in addition to proving (1) the primary liability of the indemnitor for the injury occasioning

a settlement, the settling plaintiff need only prove (2) by settling he was "responding to a reasonable anticipation of personal liability rather than acting as a mere volunteer." *St. Paul*, 12 Ill. App. 3d at 169, 298 N.E.2d at 292.

■ McCartin attempts to distinguish *St. Paul* by noting that action was for indemnification rather than contribution, and arguing the jury has no duty to "apportion the common liability" in an indemnification action. This distinction does not render the *St. Paul* analysis inapplicable. In either case the plaintiff is seeking reimbursement from a defendant responsible in whole or in part for damages the plaintiff has paid to an injured party. The lesser burden of showing only reasonable anticipation of potential liability (as opposed to proof of actual liability) is at least as justifiable in a contribution action as it is in an action for indemnification. A plaintiff seeking indemnification for its own negligent acts or omissions might have a greater incentive to dispose of a lawsuit through settlement with less forethought given to the extent of its own culpability, knowing its liability for damages could be passed on *in toto*. Conversely, the plaintiff seeking contribution will weigh its liability exposure carefully, knowing it will be liable for some percentage of the damages in any settlement, as was Case in this instance. We see no reason for distinguishing the result reached in *St. Paul* on the basis of its being an action for indemnification. Moreover, the law favors the amicable compromise and settlement of litigation, a policy which would be impeded were the settling contribution plaintiff required to carry a burden of proof as to his own negligence which he would not have borne in the initial action. (*Cf. St. Paul*, 12 Ill. App. 3d at 170-71, 298 N.E.2d at 293.) This element of a contribution cause of action is consistent with that in an indemnity action. IPI Civil 3d No. 600.09, Comment, at 600-27.

■ We cannot conclude the Act required Case to try the contribution action against itself and present evidence its product was defective or unreasonably dangerous, evidence which might later be accorded collateral estoppel effect in unrelated actions against it. The Act merely requires a showing from which the trier of fact can infer the settling plaintiff in contribution reasonably anticipated its liability to the injured party in the tort action.

In this instance, Case did put on evidence from which the jury could have concluded settlement resulted from Case's reasonable anticipation it was subject to liability in tort: (1) Sands testified the trencher did not have a safety shut-off switch for the boring rods when the operator left the controls; and (2) Case's product claims manager testified to prior lawsuits resulting in liability to Case from injuries sustained by entan-

glement with boring rods and he anticipated liability due to the seriousness of the injury to Sands.

McCartin's reliance on comment *e* to section 886A of the Restatement (Second) is misplaced in view of the statutory language of section 2(a) of the Act requiring the plaintiff in contribution to show it is one of two or more parties "subject to liability in tort *** even though judgment has not been entered against any or all of them." (Ill. Rev. Stat. 1991, ch. 70, par. 302(a).) This provision clearly contemplates the bringing of an action for contribution in the absence of an adjudication of liability. It does not require a settling plaintiff to prove itself liable. Similarly, the language in *Victory Memorial Hospital* on which McCartin relies is inapposite to the facts of this case as the issue there was the necessity of proof of the amount paid in settlement rather than the plaintiff's status as a tortfeasor.

We hold that the language and elements of proof under the Act do not require a settling plaintiff to prove its own liability to the injured party with whom it has settled; it is sufficient to present the trier of fact with a factual basis showing liability was reasonably anticipated. In this instance, testimony as to Case's prior exposure to liability claims involving entanglements with boring rods and the absence of a safety shut-off switch was sufficient to satisfy this standard. Therefore, the trial court's denial of McCartin's motions for a directed verdict and for judgment *n.o.v.* was not against the manifest weight of the evidence.

■ McCartin next maintains the court erred in refusing to strike expert testimony as an undisclosed opinion in violation of Supreme Court Rule 220(d) (134 Ill. 2d R. 220(d)). At trial Case's expert opined the trencher and attachment manufactured by Case were not unreasonably dangerous. He further stated an operational and safety manual pertaining to the trencher with attachment accompanies and is part of the product sold. The expert testified to the existence of two separate manuals, one which included safety procedures and warnings pertinent to the hydra-borer attachment and one which did not. The evidence indicated one of the two manuals was supplied with the product but the expert was unable to tell whether the wrong operational manual was supplied or a typographical error made in listing its number on the purchase order. On cross-examination by Illinois Power, the expert said if the wrong manual was sent by Case it was a "mistake" and "unacceptable." The trial court overruled McCartin's motion to strike, finding the statements were not admitted as an expert opinion.

Supreme Court Rule 220 prevents the direct testimony by an expert of opinions inconsistent with or beyond the fair scope of the facts known or opinions disclosed in the discovery proceedings. (134 Ill. 2d R. 220(d).)

McCartin construes the expert's statement as a "new opinion" inconsistent with deposition testimony that the product was not defective.

The decision whether to allow or exclude expert testimony is within the trial court's discretion and will not be disturbed on review absent a clear abuse of discretion. (See *Huelsmann v. Berkowitz* (1991), 210 Ill. App. 3d 806, 568 N.E.2d 1373; *Renfro v. Allied Industrial Equipment Corp.* (1987), 155 Ill. App. 3d 140, 507 N.E.2d 1213.) We find little merit in McCartin's characterization of the expert's trial testimony as a "new opinion" inconsistent with his deposition, since the expert was responding to a hypothetical raised in cross-examination by Illinois Power, McCartin's codefendant in the contribution action. As McCartin itself asserts in the context of its previous argument, there was no proof the wrong operational manual was actually shipped and, since Sands testified he never saw *any* manual related to the machinery, its absence would not alone have established a defect in the machinery proximately causing Sands' injury. We conclude there was no error in refusing to strike the expert's testimony.

■ McCartin next argues it is entitled to a new trial because the trial court improperly denied its oral motion for a continuance following notification of Case's settlement with Sands. McCartin claims its theory of defense prior to trial aligned it with Case to show the trencher Case manufactured was not unreasonably dangerous. According to McCartin, settlement altered the position of the parties and necessitated a reversal of its theory of defense. McCartin argues denial of a continuance hindered the cause of justice because it had not been prepared to argue Case's product was unreasonably dangerous, citing *Auschwitz v. Wabash Ry. Co.* (1931), 346 Ill. 190, 178 N.E. 403. In *Auschwitz* the plaintiff had proceeded to trial on the allegation a step on the railroad's tender car was twisted and bent, which condition proximately caused plaintiff's injury. At the close of the evidence, plaintiff was allowed to amend its pleadings, striking the allegation on the step being twisted and bent and substituting the allegation the step extended out beyond the side of the locomotive. The trial court denied the defendant a continuance to call witnesses to establish the step was in a standard and customary position. The supreme court found the trial court had abused its discretion as the defendant had no notice to defend under the changed theory. *Auschwitz*, 346 Ill. at 199, 178 N.E. at 407.

Litigants do not have an absolute right to a continuance, and the granting or denial of a motion for continuance lies within the sound discretion of the trial court and will not be overturned absent an abuse of discretion. (*Grimming v. Alton & Southern Ry. Co.* (1990), 204 Ill. App. 3d 961, 989, 562 N.E.2d 1086, 1104, *cert. denied* (1991), ____ U.S. ____,

115 L. Ed. 2d 998, 111 S. Ct. 2829.) The fact other parties have changed their theory of the case on the eve of trial does not mandate the granting of a continuance. See *Grimming*, 204 Ill. App. 3d at 988-89, 562 N.E.2d at 1103-04.

A decisive factor in reviewing a court's exercise of its discretion is whether the party seeking the continuance acted with due diligence in proceeding with the cause. (*Martinez v. Scandroli* (1985), 130 Ill. App. 3d 712, 714, 474 N.E.2d 456, 457.) In explaining the denial of the continuance here, the court noted settlement of cases set for trial is not unusual and "[t]he Court cannot manage its calendar if it continues cases every time somebody drops out. So in these cases, the parties who have been sued for contribution have to be ready to take a little more than an offensive position if in fact they end up being sole defendant by way of contribution [as] in [this] case."

We agree with the trial court's conclusion. Unlike the defendant in *Auschwitz*, McCartin was aware of Sands' theory of liability prior to trial, and the possibility he might prevail on the merits or effect a settlement, in which case contribution would then be sought from it. The unpreparedness of McCartin's counsel to present a defense based on this contingency is not grounds requiring the granting of a continuance. (See *Dempsey v. Sternik* (1986), 147 Ill. App. 3d 571, 579-80, 498 N.E.2d 310, 315.) The trial court did not abuse its discretion in concluding McCartin presented an insufficient excuse to justify a continuance.

■ Last, McCartin argues the compensation award of $201,250 should have been limited to $176,283.54, the amount of workers' compensation benefits paid Sands through the date of settlement. McCartin argues that once Case settled with Sands, McCartin had no further workers' compensation liability for future medical benefits and its liability became fixed at $176,283.54.

In *Kotecki*, the supreme court held an employer sued for contribution is liable in an amount not greater than its workers' compensation liability. In formulating its rule, the supreme court relied on and adopted the Minnesota Supreme Court's rule in *Lambertson v. Cincinnati Corp.* (1977), 312 Minn. 114, 130, 257 N.W.2d 679, 689, which approved an employer's contribution to the extent of its "total" workers' compensation liability. The *Kotecki* court did not define the scope of workers' compensation liability or expressly limit application of the rule to sums paid at the time of trial.

According to McCartin, it was relieved of paying Sands' future medical benefits accruing under section 8(a) of the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1991, ch. 48, par. 138.8(a)) by virtue of the settlement agreement between Case and Sands. Absent the settlement, its

total workers' compensation liability would have exceeded the 35% contribution judgment awarded Case.

Our supreme court in *Zuber v. Illinois Power Co.* (1990), 135 Ill. 2d 407, 553 N.E.2d 385, addressed the issue of an employer's liability under section 5(b) of the Act (see Ill. Rev. Stat. 1987, ch. 48, par. 138.5(b)) for a proportionate share of legal fees and costs incurred by an employee in an action for damages against a third party. The court determined calculation of the employer's *pro rata* share of legal expenses incurred by the employee was to be based both on past compensation benefits paid and future payments the employer would otherwise have made but for the judgment in the third-party action. *Zuber*, 135 Ill. 2d at 418, 553 N.E.2d at 389-90.

We believe the *Zuber* rationale is equally applicable to third-party contribution actions under the Act against an employer subject to workers' compensation liability to an injured employee. Where an employer is relieved of paying continuing medical benefits to an injured employee by virtue of the result of the employee's cause of action against a third party, be it judgment or settlement, the employer is subject to contribution to the extent of its reasonably projected liability for future medical benefits under the Act, limited only by the amount of the settlement and the percentage of fault apportioned to it. To hold otherwise would tie the employer's liability to the fortuity of when the tort case is settled or adjudicated. (See, *e.g.*, *Wilken v. International Harvester Co.* (Minn. 1985), 363 N.W.2d 763, 766.) In this instance, had a products liability action not been pursued by Sands against Case, McCartin would have been liable for workers' compensation benefits for sums in excess of the $201,250 contribution judgment against it. The trial court properly denied McCartin's motion to limit its contribution to compensation benefits already paid Sands at the time of trial. The judgment for contribution of $201,250 in favor of Case is affirmed.

Affirmed.

STEIGMANN, P.J., and LUND, J., concur.