WILLIAM CHANEY, Plaintiff, v. NATIONAL STEEL CORPORATION, d/b/a Granite City Steel, Defendant and Third-Party Plaintiff-Appellee (Guarantee Electric Company, Third-Party Defendant-Appellant and Cross-Appellee; Amiel Cueto, Appellee and Cross-Appellant).

Fifth District   No. 5—92—0758

Opinion filed June 8, 1995.

GOLDENHERSH, J., concurring in part and dissenting in part.

Michael Reda, of Evans & Dixon, of Edwardsville, for appellant.

John W. Leskera and William L. Berry, both of Dunham, Boman & Leskera, of East St. Louis, for appellee National Steel Corporation.

Amiel Cueto, of Cueto, Cueto & Cueto, Ltd., of Belleville, appellee *pro se.*

JUSTICE HOPKINS delivered the opinion of the court:

Plaintiff, William Chaney (Chaney), was severely injured in an accident while employed by Guarantee Electric Company (Guarantee). The accident occurred at an industrial plant owned by National Steel Corporation, d/b/a Granite City Steel (Granite City Steel).

Chaney sued Granite City Steel for damages but settled his case on September 25, 1991, for $7.5 million. Prior to the settlement, Granite City Steel filed a third-party complaint for contribution against Guarantee.

Thus, this case involves the interrelationship between the Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/0.01 *et seq.* (West 1992)) and the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 1992)), in light of the decision in *Kotecki v. Cyclops Welding Corp.* (1991), 146 Ill. 2d 155, 585 N.E.2d 1023, wherein the Illinois Supreme Court limited the contribution liability of employers sued as third-party defendants to the amount of their statutory workers' compensation liability.

The jury in the contribution case rendered a verdict in favor of Granite City Steel on the issue of contribution and assessed the present cash value of future workers' compensation owed by Guarantee to Chaney. The trial court entered judgment on the jury's verdict and assessed the attorney fees due plaintiff's attorney from Guarantee under section 5(b) of the Workers' Compensation Act. (820 ILCS 305/5(b) (West 1992).) Guarantee appeals from these orders. Amiel Cueto (Cueto), Chaney's lawyer in the personal injury action against Granite City Steel, cross-appeals from the trial court's order assessing his attorney fees due from Guarantee.

The issues we consider on appeal are: (1) whether the trial court had subject matter jurisdiction to determine the workers' compensation limitation on the amount Guarantee owed to Granite City Steel as contribution; (2) whether the trial court erred in using the $7.5 million settlement as the basis of the common liability between Guarantee and Granite City Steel; (3) whether the trial court erred in allowing Granite City Steel to amend its pleadings to conform to the proof by adding allegations of violations of the Health and Safety Act (820 ILCS 225/.01 *et seq.* (West 1992)); (4) whether the trial court properly assessed attorney fees under section 5(b) of the Workers' Compensation Act (820 ILCS 305/5(b) (West 1992)); (5) whether the trial court erred in excluding evidence concerning the change in Chaney's condition since the date of settlement; and (6) whether the trial court properly denied Guarantee's motions to dismiss Granite City Steel's contribution action. We affirm.

## I. FACTS

On February 16, 1990, Chaney was working for Guarantee at the Cold Roll Mill owned by Granite City Steel when his head was crushed by an overhead crane. As a result of his injuries, Chaney underwent a lobotomy of the majority of the left side of his brain. As

a result, he is permanently and totally disabled. Chaney sued Granite City Steel, which then filed a third-party complaint for contribution against Guarantee. Guarantee moved to dismiss the third-party complaint on several grounds. The trial court denied the motions to dismiss on all grounds.

On September 25, 1991, after several days of trial in the personal injury case against Granite City Steel, Chaney entered into a settlement with Granite City Steel, releasing all claims against Granite City Steel and Guarantee. The terms of the settlement were announced in court on September 25, 1991, and were later set forth in a petition requesting the court to approve the settlement. Guarantee terminated all payments to Chaney as of the day of settlement. The trial court determined that the settlement was made in good faith and entered an order approving the settlement on October 31, 1991. On the same date, the trial court entered an order dismissing Chaney's complaint against Granite City Steel, but not the third-party complaint of Granite City Steel against Guarantee.

The $7.5 million settlement was distributed as follows: $2.5 million to Chaney's attorney pursuant to a retainer contract, $42,953.56 to Chaney's attorney for costs in prosecuting the lawsuit against Granite City Steel, $3.5 million to purchase an annuity for Chaney, $415,733.14 to Guarantee to satisfy its workers' compensation lien, and the balance, $1,041,313.30, to Chaney's parents, John and Judy Chaney, as individuals, for their own compensatory damages. Chaney's guardian *ad litem* filed an affidavit stating his approval of the settlement. Subsequently, Chaney's parents were appointed as the guardians of Chaney's estate.

On December 18, 1991, Cueto filed a motion to adjudicate his attorney fees due from Guarantee. Cueto's motion alleged that he was entitled to an award of fees from Guarantee under section 5(b) of the Workers' Compensation Act and under *Zuber v. Illinois Power Co.* (1990), 135 Ill. 2d 407, 553 N.E.2d 385, for the amount of compensation "to be paid," in other words, the future compensation which Guarantee was relieved from paying by virtue of Chaney's settlement with Granite City Steel. Guarantee filed an objection to Cueto's motion for attorney fees.

The trial of the third-party action commenced on June 9, 1992. The jury found Granite City Steel 63% at fault for Chaney's injuries and found Guarantee 37% at fault for Chaney's injuries. The jury, in an advisory capacity, determined that the present cash value of the caretaking expenses for Chaney from the date of settlement through the remainder of his life amounted to $4 million and that the present cash value of the weekly workers' compensation benefits due Chaney

from the date of settlement through the remainder of his life was $263,199. The trial court determined that the present cash value of the medical expenses Guarantee would have had to pay Chaney from the date of settlement through the remainder of his life was $1 million. The trial court added together the present cash values of the caretaking expenses, workers' compensation benefits, and medical expenses to arrive at a figure of $5,263,199 for the present cash value of all future compensation due to Chaney from Guarantee. The trial court then added the amount of workers' compensation paid by Guarantee up to the date of settlement, $415,733.34, to the $5,263,199 future compensation amount and arrived at a figure of $5,678,932.30 for the present cash value of Guarantee's total, past and future, workers' compensation liability to Chaney.

The trial court also determined that Cueto was entitled to an additional $622,049.77 in attorney fees from Guarantee. In assessing these attorney fees, the trial court relied upon section 5(b) of the Workers' Compensation Act, which requires employers to pay their "pro rata share of all costs and reasonably necessary expenses in connection with" third-party claims against employers. (820 ILCS 305/5(b) (West 1992).) The statute also provides that "where the services of an attorney at law of the employee *** have resulted in or substantially contributed to the procurement by suit, settlement or otherwise of the proceeds out of which the employer is reimbursed, then, in the absence of other agreement, the employer shall pay such attorney 25% of the gross amount of such reimbursement." 820 ILCS 305/5(b) (West 1992).

After the trial court entered judgment against Guarantee and in favor of Cueto for $622,049.77 in attorney fees, the trial court granted Cueto's post-trial motion and increased Cueto's judgment for attorney fees from $622,049.77 to $790,498.58, according to one of several formulas set forth by Cueto in his post-trial motion. Guarantee appeals the trial court's judgments finding it liable in contribution to Granite City Steel and liable for attorney fees to Cueto. Cueto appeals the trial court's decision granting him $790,498.58 in attorney fees from Guarantee, arguing that the trial court erred in awarding him a lower amount than required by law.

## II. JURISDICTION

Guarantee argues that the trial court did not have jurisdiction to determine the present cash value of its future workers' compensation liability to Chaney, since the Workers' Compensation Act is an exclusive statutory scheme. (*Meyer v. Buckman* (1955), 7 Ill. App. 2d 385, 129 N.E.2d 603.) Guarantee contends that the trial court only

has jurisdiction to the extent provided for within the Workers' Compensation Act itself (*Beasley v. Industrial Comm'n* (1990), 198 Ill. App. 3d 460, 555 N.E.2d 1172), and that the trial court and advisory jury had no jurisdiction to determine the workers' compensation benefits due from Guarantee to Chaney because that is a function that belongs exclusively to the Industrial Commission. 820 ILCS 305/19 (West 1992).

Granite City Steel asserts that Guarantee misconstrues what really happened at the trial court. Granite City Steel argues that the case was a contribution case and not one to adjudicate future workers' compensation liability. Further, Granite City Steel claims that no workers' compensation adjudication was sought or made within the contribution case. We agree.

The law is settled that a defendant in a personal injury or product liability action may file a third-party complaint against the plaintiff's employer for contribution. (*Skinner v. Reed-Prentice Division Package Machinery Co.* (1978), 70 Ill. 2d 1, 374 N.E.2d 437.) In 1979, in response to *Skinner*, the legislature passed the Contribution Act. (*Kotecki*, 146 Ill. 2d 155, 585 N.E.2d 1023.) In 1984, the supreme court further clarified the issue in *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 461 N.E.2d 382, holding that the Workers' Compensation Act gives employers immunity from tort actions by employees, but that act is no bar to claims for contribution from an employer by third parties held liable to the employee.

The supreme court decision of *Freer v. Hysan Corp.* (1985), 108 Ill. 2d 421, 484 N.E.2d 1076, is dispositive of this issue. In *Freer*, the plaintiff settled his case against the defendant/third-party plaintiff. The employer then moved to enforce its workers' compensation lien against the settlement proceeds. The issue in *Freer* was how the employer was to be credited or reimbursed for future workers' compensation payments that would have been due to the plaintiff/employee but for the settlement. The supreme court held that section 5(b) of the Workers' Compensation Act imposes the duty of protecting the employers' lien upon the trial court, not the Industrial Commission. *Freer*, 108 Ill. 2d 421, 484 N.E.2d 1076; see also *Sands v. J.I. Case Co.* (1992), 239 Ill. App. 3d 19, 605 N.E.2d 714 (wherein the fourth district recognized the jurisdiction of the trial court to determine the limit of an employer's contribution liability in a case similar to the case *sub judice*).

■ Just as in *Freer* and *Sands*, the trial court in the case at bar was responsible for determining the cap or limitation on Guarantee's liability for contribution to the third-party plaintiff. (*Kotecki*, 146 Ill. 2d 155, 585 N.E.2d 1023.) In the instant case, the trial court

determined that limitation to be $5,678,932.30. Guarantee is correct that a trial court is not authorized to assess workers' compensation liability to an employee, but that is not what the trial court or the advisory jury did in this case.

The $5,678,932.30 figure is the total workers' compensation liability Guarantee would have owed to Chaney *if* Chaney had not settled his case with Granite City Steel. The $5,678,932.30 figure is not an adjudication of an amount to be paid to Chaney; it is simply the cap or limitation on the amount of contribution Granite City Steel may claim from Guarantee. (*Kotecki*, 146 Ill. 2d 155, 585 N.E.2d 1023.) In other words, pursuant to the supreme court's decision in *Kotecki*, even if Guarantee were found by the jury to be 100% liable to Chaney, Guarantee would not have to contribute any more to Granite City Steel for their common liability to Chaney than the present cash value of Guarantee's lifetime workers' compensation liability to Chaney, $5,678,932.30, even though Granite City Steel settled the case with plaintiff for considerably more, $7.5 million.

Therefore, for the reasons stated, the trial court did not err in exercising jurisdiction over the contribution case.

### III. $7.5 MILLION SETTLEMENT AS BASIS OF CONTRIBUTION LIABILITY

Guarantee contends that the trial court erred in using the entire $7.5 million settlement as the basis from which the jury determined Guarantee's contribution liability. Guarantee initially claims that the amount paid to Chaney's parents, over $1.041 million, was voluntary on the part of Granite City Steel, as John and Judy Chaney were not legally entitled to their own compensatory damages, and that as a result, the trial court erred in adding the $1.041 million to the amount published to the jury as Chaney's settlement. We find that Guarantee has waived this argument.

Guarantee did not object to the amount of the settlement at the time it was announced. As the trial court determined, Granite City Steel and Chaney clearly announced that they had settled the case for $7.5 million. Guarantee objected to the trial court's grant of a mistrial and the severance of the contribution claim, but it did not make any objection to the announcement that John and Judy Chaney were to receive $1.041 million as their own compensatory damages or to the total amount of the settlement. The trial judge stated that he had presided over seven days of trial, and that, clearly, the $7.5 million settlement was made in good faith. Guarantee did not object to the procedure used by the trial court or to the decision that the settlement was made in good faith.

■ Absent a contemporaneous objection, a settlement determined by the trial court to be made in good faith is presumed to be reasonable. (*Mallaney v. Dunaway* (1988), 178 Ill. App. 3d 827, 533 N.E.2d 1114.) To prevail on a challenge to the reasonableness of a settlement, a defendant to the contribution claim must establish that the difference between the settlement amount and the value of the injured plaintiff's claim is substantial enough to show bad faith. (*Mallaney*, 178 Ill. App. 3d 827, 533 N.E.2d 1114.) Here, Guarantee has never argued that Chaney's permanent brain damage was not worthy of a $7.5 million settlement but has argued only that Chaney's parents were not entitled to receive anything as compensatory damages. However, as the trial court explained, the record is clear that the case was settled for $7.5 million, whether a portion of that money went to Chaney's parents or not. Not having objected to the total amount of the settlement, Guarantee has waived any argument that the jury should not have considered the total amount of the settlement.

Thus, Guarantee's arguments that the settlement published to the jury should have been reduced for two additional reasons, that Granite City Steel did not actually pay $3.5 million for Chaney's annuity and that Guarantee should have been credited for $1 million in insurance coverage, fail for the same reason.

## IV. PLEADING ALLEGATIONS UNDER THE HEALTH AND SAFETY ACT

Guarantee argues that the trial court committed reversible error when it allowed Granite City Steel to amend its pleadings at the close of all of the evidence to allege violations of the Health and Safety Act. (820 ILCS 225/.01 *et seq.* (West 1992).) Guarantee argues that the Industrial Commission is the only body with the authority to administer the Health and Safety Act, that the Health and Safety Act does not confer any private cause of action, and that the provisions of that act are preempted by Federal law. Granite City Steel argues that the trial court properly allowed it to amend its pleadings to conform to the proof and that the amendment did not plead any new cause of action or duty but only restated the general common law, that an employer has a duty to provide its employee with a reasonably safe place in which to work. We agree with Granite City Steel.

■ It is not the Industrial Commission but the Department of Labor that is authorized to administer the Health and Safety Act. Nevertheless, the trial court was not administering the Health and Safety Act, it was presiding over a case brought under the Contribu-

tion Act, as we have more fully set forth in section II of this opinion. Therefore, the trial was governed by the rules of the Contribution Act. (*Hall v. Archer-Daniels-Midland Co.* (1988), 122 Ill. 2d 448, 524 N.E.2d 586.) Finally, regardless of whether the Health and Safety Act has been preempted by Federal law, the common law has not been so preempted.

The trial court specifically found that Granite City Steel had presented evidence tending to show that Guarantee was negligent in not sufficiently instructing Chaney about the potential hazards in the Cold Roll Mill. The trial court correctly stated the common law rule that an employer has a duty to provide its employee a reasonably safe place in which to work. The court should be liberal in allowing pleadings to conform to the proof actually presented at trial. (735 ILCS 5/2—616(c) (West 1992).) Therefore, the trial court did not err in allowing Granite City Steel to amend its pleadings.

Guarantee also argues that the trial court compounded its error by allowing certain provisions of the Health and Safety Act to be included in the jury instructions. However, since we do not find the amendment to be in error, we similarly do not find instructions based upon those amendments to be in error. Nevertheless, we have reviewed the instructions and find that they properly advised the jury of all of the applicable law. No more is required of jury instructions. (*Gaskin v. Goldwasser* (1988), 166 Ill. App. 3d 996, 520 N.E.2d 1085.) Thus, we hold that the trial court did not commit any error in allowing Granite City Steel to amend its pleadings to conform to the proof or in instructing the jury accordingly.

## V. ATTORNEY FEES

Guarantee argues that the trial court erred in awarding attorney fees to Cueto under section 5(b) of the Workers' Compensation Act. First, Guarantee argues that allowing Cueto to receive fees from Guarantee in addition to the $2.5 million in fees already received under the retainer contract with plaintiff amounts to an improper double recovery. Cueto responds that section 5(b) provides for the payment of attorney fees from the employer to plaintiff's attorney regardless of whether plaintiff's attorney is also paid fees under a contract with his client.

■ Section 5(b) requires an employer to pay plaintiff's attorney 25% of the gross amount of the "reimbursement" it received if the attorney's services "resulted in or substantially contributed to the procurement by suit, settlement or otherwise of the proceeds out of which the employer is reimbursed." (820 ILCS 305/5(b) (West 1992).) In the seminal case of *Zuber v. Illinois Power Co.* (1990), 135 Ill. 2d

407, 553 N.E.2d 385, the supreme court held that section 5(b) attorney fees are to be assessed against the amount of workers' compensation paid prior to the settlement, as well as the compensation that the employer would have paid in the future but for the settlement or decision in the underlying case. (*Zuber*, 135 Ill. 2d 407, 553 N.E.2d 385.) In *Zuber*, the court was presented with a question of how attorney fees are to be computed under section 5(b) when the attorney has not been fully compensated under his contract with plaintiff. In the case at bar, however, Cueto was fully compensated under his contract with plaintiff. Therefore, the court in *Zuber* did not consider the question or facts presented herein. The parties have not provided us with any authority other than *Zuber*, and our research has found none, which makes resolution of this issue a question of first impression.

We find, nevertheless, that many of the principles set forth in *Zuber* are applicable to the resolution of facts herein. In considering the meaning of the term "reimbursement" as used in section 5(b), the court in *Zuber* held that for purposes of the 25% attorney fees due from the employer, reimbursement applies both to amounts paid in compensation benefits prior to the settlement or other resolution of the original case and to the amount the employer was relieved of paying after that date. The court in *Zuber* found that section 5(b) was "clearly" intended to achieve exactly that result and that limiting the fees and costs paid to plaintiff's attorney to the amount paid up to the date of settlement or other resolution of the case would lead to absurd and unfair results. *Zuber*, 135 Ill. 2d 407, 553 N.E.2d 385.

We note the recent decision of this district, *Rice v. McDonald's Corp.* (1994), 268 Ill. App. 3d 201, 644 N.E.2d 482, wherein we stated that *Kotecki* (146 Ill. 2d 155, 585 N.E.2d 1023) limits the amount of contribution that the third-party plaintiff can claim from the employer to the amount of benefits the employer "has paid." (*Rice*, 268 Ill. App. 3d at 204, 644 N.E.2d at 485.) *Rice* is readily distinguishable, however, in that neither the third-party plaintiff nor the original plaintiff's attorney in that case requested the employer/third-party defendant to contribute anything beyond the past compensation benefits paid by the employer. Our decision in *Rice*, therefore, should not be read as an attempt to refute the rule which was clearly set forth in *Zuber*, that section 5(b) attorney fees may be assessed against the amount of compensation paid up to the date of settlement or other resolution of the underlying case, as well as against the future compensation which the employer is relieved of paying as a result of that resolution. *Zuber*, 135 Ill. 2d 407, 553 N.E.2d 385.

■ Based upon the reasoning of *Zuber*, and the language of sec-

tion 5(b), we do not find that Cueto received a double recovery for the same services. Indeed, Cueto received two separate fees, and both in extremely large amounts, but each fee was for a separate function and authorized under a different law. The fee of one-third of the settlement was based upon Cueto's contract with plaintiff. Cueto earned his one-third contractual fee by recovering a $7.5 million settlement for plaintiff. Cueto earned his additional fee by substantially contributing to the procurement by settlement of the proceeds out of which the employer was reimbursed. (820 ILCS 305/5(b) (West 1992).) In other words, Cueto earned his fee under section 5(b) by negotiating a settlement with Granite City Steel that relieved Guarantee of paying millions of dollars in the form of compensation benefits payable to Chaney for the remainder of his life.

■ Guarantee next argues that the trial court erred by including the present cash value of the future medical benefits payable by Guarantee to Chaney, $1 million, in the formula by which the trial court assessed the attorney fees due Cueto. We disagree. The Workers' Compensation Act includes "all" necessary medical expenses within the amount of compensation payable to an employee for an accidental injury not resulting in death. (820 ILCS 305/8 (West 1992).) Guarantee does not argue that the court erred in assessing the present cash value of any of the compensation values, presumably because such a procedure is authorized under the law. (*Sands*, 239 Ill. App. 3d 19, 605 N.E.2d 714.) Therefore, the trial court did not abuse its discretion by including in its formula for determining the attorney fees Guarantee owes Chaney's attorney the present cash value of the future medical expenses that Guarantee was relieved of paying.

■ Guarantee finally argues that the settlement agreement released Guarantee of any obligation to pay additional attorney fees. Guarantee's argument on this point is not supported by the terms of the release. It is elementary that the terms of a release control the specific claims and parties which are released from liability. (*Rakowski v. Lucente* (1984), 104 Ill. 2d 317, 472 N.E.2d 791.) The release signed by the parties as a part of this settlement agreement specifically provides that Granite City Steel is paying a $7.5 million settlement to plaintiff "with the expectation that [Granite City Steel] will pursue their claim for indemnity" or contribution against Guarantee. The attorney fees awarded Cueto from Guarantee were part and parcel of the contribution action contemplated by Granite City Steel and later prosecuted successfully against Guarantee. Where the parties specifically contemplate the prosecution of additional claims after the settlement and release of the original action, the courts are required to give effect to the parties' intentions as stated within the

four corners of the release. *Farm Credit Bank v. Whitlock* (1991), 144 Ill. 2d 440, 581 N.E.2d 664.

For all of the reasons stated, we affirm the trial court.

Affirmed.

RARICK, J., concurs.

JUSTICE GOLDENHERSH, concurring in all of the opinion publishable under Supreme Court Rule 23 and parts of the material nonpublishable under Supreme Court Rule 23; dissenting in part to material nonpublishable under Supreme Court Rule 23.