MARILYN JEAN WILLIAMS *et al.*, Plaintiffs-Appellants, v. COVENANT MEDICAL CENTER, Defendant-Appellee.

Fourth District   No. 4—00—0332

Argued September 13, 2000.—Opinion filed October 4, 2000.

Thomas M. Harris (argued), of Jerome Mirza & Associates, Ltd., of Bloomington, for appellants.

Richard R. Harden (argued) and Kenneth D. Reifsteck, both of Thomas, Mamer & Haughey, of Champaign, for appellee.

PRESIDING JUSTICE COOK delivered the opinion of the court:

In February 1998, plaintiffs, Marilyn Williams (Williams) and Herman Williams, filed a medical malpractice complaint against Covenant Medical Center (Covenant), alleging that Covenant was negligent in allowing Williams to leave her bed and fall while she was a patient at Covenant. In November 1999, the trial court granted Covenant's September 1999 motion for summary judgment. Plaintiffs appeal, arguing that the trial court erred (1) in granting summary judgment on a basis not sufficiently raised in Covenant's motion for summary judgment, (2) in denying their motion to strike Covenant's motion for summary judgment and prematurely granting Covenant's motion for summary judgment, and (3) in denying their oral motion for a continuance to obtain an affidavit from their expert. We reverse and remand.

## I. BACKGROUND

In February 1996, Williams was admitted to Covenant with chronic

obstructive pulmonary disease. During the evening of February 23 or the early morning hours of February 24, she apparently fell after leaving her bed to use the bathroom. She suffered a compression fracture of her L1 lumbar vertebra.

In February 1998, plaintiffs filed a complaint against Covenant, alleging that Covenant was negligent in allowing Williams to leave her bed and fall, causing her pain and suffering, medical expenses, and disability.

In January 1999, Covenant deposed Williams. She could not recall the fall or even remember being hospitalized, possibly because she was heavily medicated during her hospital stay. Covenant also took discovery depositions of Williams' husband and her three daughters. On February 26, 1999, plaintiffs wrote a letter to Covenant's attorney, requesting the depositions of five nurses, two nurse's aides, and Vicky Garretson, Covenant's risk-management coordinator. In March 1999, Covenant filed a motion for summary judgment based on Williams' inability to remember that she fell, to describe how she fell, or to identify any witnesses of her fall. Covenant did not attach any affidavits from experts regarding the standard of care, breach of the standard of care, or proximate causation. Plaintiffs then filed a motion to compel Covenant to produce eight potential occurrence witnesses for deposition, alleging that Covenant refused to produce its employees until after a hearing on its motion for summary judgment. In April 1999, Covenant allowed plaintiffs to depose Garretson and four of its nurses.

Plaintiffs moved to revise the discovery schedule on April 1, 1999, the initial deadline for plaintiffs to disclose expert witnesses. In May 1999, the trial court extended the deadline "until a date 30 days after the depositions of Covenant personnel requested by plaintiff[s] in a letter to defense attorney dated February 26, 1999[,] are taken," and it allowed plaintiffs until June 15, 1999, to respond to Covenant's motion for summary judgment. On June 14, 1999, plaintiffs moved to continue the deadline for their response to summary judgment because Covenant failed to produce three of the eight employees for deposition. The trial court again granted the motion and stated in a docket entry, "The parties should notify the court when discovery relating to the motion for summary judgment is completed and said motion is ready for consideration." A September 17, 1999, docket entry states, "Counsel have agreed to a briefing schedule which concludes [October 14, 1999]." Also on that day, Covenant filed a motion for summary judgment that was substantially identical to the one that Covenant filed in March 1999.

On October 8, 1999, plaintiffs filed a response to Covenant's summary judgment motion. They attached depositions of Jane Brais, Wil-

liams' daughter; Garretson; Leslie Windler, R.N.; Twyla Ingram, R.N.; and Dr. Maury Topolosky, Williams' treating physician. They also appended an excerpt from Covenant's policy and procedure manual regarding its "fall prevention program" as well as a consultation report dated February 26, 1999, prepared by Dr. Ruth Craddock.

Brais stated that Garretson admitted to her that Williams fell. Windler's "falls assessment" report first indicated a history of falls on February 24. Ingram was on duty the night that Williams fell, and she made the following late chart entries on February 28 based upon her observations from the early morning of February 24:

"[00:15 a.m.] [patient] denies questions [or] concerns. *** [02:35 a.m.] [patient] has sustained no injury. [4:00 a.m.] Tylenol #3 [orally] given for back pain. *** [approximately 5:00 a.m.] I was informed [that patient disconnected] foley [catheter]. Found foley [catheter at] bed side with [balloon] inflated. [Patient] was in [b]athroom sitting on stool. *** [Patient] escorted to bed ***. *** States she needed to go to the bathroom."

Ingram explained in her deposition that the check marks for "rails" on Williams' chart indicate that the upper two bed rails were up. Those two rails are almost always raised for all patients to remind them that they can call a nurse for assistance. According to Ingram, only patients who are disoriented, psychotic, or have multiple tubes and intravenous needles would need to have all four bed rails up to prevent them from getting out of bed.

Dr. Topolosky stated in his deposition that Williams informed him that she had fallen. On the morning of February 24, Williams fit six criteria on Covenant's "falls assessment" form that put her at a risk of falling: she was over 60 years old; had an unsteady gait; had multiple diagnoses; and had medications with sedative, hypotensive, and diuretic effects. According to the form, a patient whose condition fits at least three criteria should be considered for safety intervention under Covenant's "fall prevention program." According to that program, keeping all four bed rails raised is one of the recommended safety precautions.

Dr. Craddock's consultation report stated, in pertinent part:

"Two to three evenings ago, [Williams] was trying to get out of bed to use the bathroom and she fell out of bed, noting that her oxygen cord was wrapped around her leg and making it difficult for her to maneuver easily. She landed on her right side. She did not note immediate pain and called for the nurse. The nurse helped her up and did get her [onto] the commode, which she used. She was then put back in bed and noted progressive pain in the low back and right side of the lower back region as the night wore on."

In October 1999, Covenant filed a rebuttal to plaintiffs' response

to its summary judgment motion. For the first time, Covenant explicitly asserted that plaintiffs had no expert testimony to establish the standard of care and breach of the standard of care. In November 1999, plaintiffs filed a motion to strike Covenant's September 1999 motion for summary judgment as untimely because it attempted to circumvent expert discovery.

At a hearing in November 1999, the trial court denied plaintiffs' motion to strike because it found that the September 1999 motion for summary judgment was timely. Then, plaintiffs orally moved for a continuance to obtain an affidavit of an expert to respond to Covenant's summary judgment motion. Plaintiffs also disclosed to the court that Dr. George Schoedinger was their retained expert and that Dr. Schoedinger had prepared the health professional's report that plaintiffs attached to their complaint. The trial court denied the motion for a continuance and proceeded to a hearing on Covenant's motion for summary judgment.

The trial court granted Covenant's motion for summary judgment because plaintiffs failed to demonstrate that the standard of care required Covenant's nurses to keep all four rails raised on Williams' bed. Thus, the court found that no genuine issue of material fact existed regarding whether any negligence by Covenant, its agents, or its employees proximately caused Williams' injuries.

In December 1999, plaintiffs filed motions to reconsider, attaching an affidavit from Dr. Schoedinger. His expert opinion, based upon a reasonable degree of medical certainty, was that the nursing standard of care required that all four rails be raised on Williams' bed because she had conditions causing her to be at an increased risk to fall and that Covenant's nursing staff deviated from that standard of care by failing to raise all four rails on Williams' bed, resulting in Williams being able to leave her bed and fall to the floor and causing a compression fracture of her L1 lumbar vertebra. The trial court refused to consider Dr. Schoedinger's affidavit because plaintiffs had or should have had it available prior to the grant of summary judgment. Thus, the trial court denied plaintiffs' motions for reconsideration, and plaintiffs appealed.

## II. ANALYSIS

### A. Standard of Review

■ Summary judgment is appropriate when the pleadings, depositions, and admissions, together with any affidavits, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1998). When ruling on a motion for summary judgment, a trial court must view all

evidence in a light most favorable to the nonmovant. *Rotzoll v. Overhead Door Corp.*, 289 Ill. App. 3d 410, 413, 681 N.E.2d 156, 158 (1997). We review *de novo* grants of summary judgment. *Rotzoll*, 289 Ill. App. 3d at 413, 681 N.E.2d at 158.

## B. Scope of Summary Judgment Motion

Plaintiffs contend that the trial court erred in granting Covenant summary judgment on the issues of the standard of care and breach of the standard of care because Covenant did not raise those issues in its motion for summary judgment. Plaintiffs assert that defendants who move for summary judgment have a burden similar to those moving to dismiss the pleadings to specifically identify deficiencies in the plaintiffs' case.

■ Section 2—615(a) of the Code of Civil Procedure (Code) (735 ILCS 5/2—615(a) (West 1998)) provides that a motion with respect to pleadings "shall point out specifically the defects complained of." Also, section 2—615(b) of the Code (735 ILCS 5/2—615(b) (West 1998)) provides that a motion to dismiss a pleading that is substantially insufficient in law "must specify wherein the pleading or division thereof is insufficient." However, section 2—1005(b) of the Code (735 ILCS 5/2—1005(b) (West 1998)) enables a defendant to "move with or without supporting affidavits for a summary judgment in his or her favor as to all or any part of the relief sought against him or her." No language in section 2—1005(b) requires the same level of specificity needed in a motion to dismiss under section 2—615(b).

We reject plaintiffs' suggestion that Covenant's motion for summary judgment was too vague for them to adequately respond to it. Covenant's motion for summary judgment was not restricted in scope to the issue of whether Williams fell. However, we find that it insufficiently raised the issues of plaintiffs' failure to establish with expert opinion Covenant's breach of the standard of care and the proximate cause of Williams' injuries. Covenant did not carry its initial burden of production on those issues.

■ A defendant who moves for summary judgment may meet its initial burden of production in at least two ways: (1) by affirmatively disproving the plaintiff's case by introducing evidence that, if uncontroverted, would entitle the movant to judgment as a matter of law (traditional test) (see *Purtill v. Hess*, 111 Ill. 2d 229, 240-41, 489 N.E.2d 867, 871 (1986)), or (2) by establishing that the nonmovant lacks sufficient evidence to prove an essential element of the cause of action (*Celotex* test) (see *Rice v. AAA Aerostar, Inc.*, 294 Ill. App. 3d 801, 805, 690 N.E.2d 1067, 1070 (1998), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 273, 106 S. Ct. 2548, 2552 (1986);

see also *Fooden v. Board of Governors of State Colleges & Universities*, 48 Ill. 2d 580, 587, 272 N.E.2d 497, 500 (1971) (summary judgment is appropriate *if* what is contained in the pleadings and affidavits would have constituted all of the evidence before the court and the trial court would have directed a verdict on that evidence)).

■ As the movant, Covenant bears the burden of persuasion and the initial burden of production. Only if a defendant satisfies its initial burden of production does the burden shift to the plaintiffs to present some factual basis that would arguably entitle them to a judgment under the applicable law. *Rice*, 294 Ill. App. 3d at 805, 690 N.E.2d at 1070. A party opposing summary judgment may rely solely upon the pleadings to create a question of material fact until the movant supplies facts that would clearly entitle it to judgment as a matter of law. *Malone v. American Cyanamid Co.*, 271 Ill. App. 3d 843, 846, 649 N.E.2d 493, 495 (1995).

Covenant maintains that it is entitled to summary judgment because Williams cannot recall what caused her to fall. In *Kimbrough v. Jewel Cos.*, 92 Ill. App. 3d 813, 817, 416 N.E.2d 328, 331 (1981), the defendant met its burden of production by producing a deposition of the plaintiff in which plaintiff stated she did not know why she fell and answers to interrogatories in which plaintiff stated that there were no other known eyewitnesses. However, *Kimbrough* is distinguishable because that case involved simple negligence and the plaintiff there had the burden of proving that a condition of the defendant's premises caused her to fall. *Kimbrough*, 92 Ill. App. 3d at 818, 416 N.E.2d at 332. Thus, the plaintiff could not prove her case when she could not specify what caused her to fall. *Kimbrough*, 92 Ill. App. 3d at 818, 416 N.E.2d at 332.

Plaintiffs' complaint alleges that Covenant was negligent in providing medical care. In this medical malpractice case, plaintiffs must prove with expert opinion (1) the proper standard of care by which to measure the conduct of Covenant's nurses, (2) a negligent breach of the standard of care, and (3) resulting injury proximately caused by the breach. See *Seef v. Ingalls Memorial Hospital*, 311 Ill. App. 3d 7, 15, 724 N.E.2d 115, 122 (1999), citing *Higgens v. House*, 288 Ill. App. 3d 543, 546, 680 N.E.2d 1089, 1092 (1997). One of plaintiffs' allegations was that Covenant was negligent because its nurses allowed Williams to get out of bed by failing to raise all four rails on her bed. Thus, the condition of Covenant's premises was not at issue, and *how* Williams fell *after* she got out of bed is irrelevant to the issue of Covenant's negligence. In any event, Williams described how she fell to Dr. Craddock, who memorialized the account in her consultation report.

■ Covenant's motion for summary judgment was insufficient to place the burden on plaintiffs to come forward with expert opinion because Covenant's motion contained no affidavits and only a bare assertion that plaintiffs had no expert testimony to establish that Covenant's negligence was the proximate cause of Williams' injuries. Covenant failed to establish that plaintiffs could not produce an admissible expert opinion on the issues of Covenant's breach of the standard of care and proximate cause of Williams' injuries, and Covenant made no showing that it was clearly entitled to judgment as a matter of law on those issues. Thus, plaintiffs could have relied on their complaint to create an issue of material fact on those issues, and summary judgment in favor of Covenant on that basis was improper.

## C. Timeliness of Summary Judgment Motion

■ Even if Covenant's motion was sufficient to carry its burden of production on the issues of the breach of the standard of care and proximate cause, it was premature. The trial court erred in denying plaintiffs' motion to strike that portion of Covenant's motion for summary judgment and in prematurely granting Covenant's motion for summary judgment based on plaintiffs' failure to show an issue of material fact on those issues.

Plaintiffs filed their complaint in February 1998. In March 1999, only 13 months later and prior to allowing plaintiffs to depose its nurses, Covenant filed a *Celotex*-type motion for summary judgment. The motion was still premature in September 1999 when Covenant filed a substantially identical motion for summary judgment. Plaintiffs still had not completed deposing all occurrence witnesses, and expert discovery had not yet commenced and was not even scheduled to begin. Plaintiffs proceeded diligently in gathering evidence and did not violate any discovery deadlines.

Covenant contends that its motion for summary judgment was timely because the parties had over six months to agree on a briefing schedule. During that time, plaintiffs obtained two continuances of their discovery deadlines because Covenant failed to make all occurrence witnesses available for deposition. In April 1999, plaintiffs informed the court that they needed those depositions so that they could disclose expert witnesses. Covenant agreed to produce all eight occurrence witnesses for deposition but allowed plaintiffs to depose only five of those witnesses. Covenant should have objected to those continuances if it believed that it could not produce two former nurse's aides for deposition and that those depositions would not be needed because they worked after the shift during which Williams fell. Instead, Covenant failed to object and simply reiterated its motion for summary judgment.

Covenant points out that section 2—1005(b) of the Code states that "[a] defendant may, *at any time,* move with or without supporting affidavits for a summary judgment in his or her favor as to all or any part of the relief sought against him or her." (Emphasis added.) 735 ILCS 5/2—1005(b) (West 1998). However, a plaintiff should be given adequate time to gather evidence when a defendant makes a *Celotex*-type motion. See *Hansbrough v. Kosyak,* 141 Ill. App. 3d 538, 549, 490 N.E.2d 181, 188 (1986) ("a medical malpractice plaintiff should be afforded every reasonable opportunity to establish his case"); see also 4 R. Michael, Illinois Practice § 38.4, at 227 (1989) (Civil Procedure Before Trial) (a motion for summary judgment should not be used to evade the schedule established in a case-management order); 166 Ill. 2d R. 218.

Covenant also argues that it should be entitled to bring a summary judgment motion at any time to avoid extensive discovery every time it is sued. If Covenant desired to obtain summary judgment early in the proceedings, it should have filed a traditional summary judgment motion and attached an expert's affidavit that established that its nurses were not negligent. Covenant did not do so.

### D. Issue of Whether Williams Fell

Covenant satisfied its burden of production in its motion for summary judgment on the issue of whether Williams fell. However, plaintiffs established that a question of material fact existed on that issue by presenting admissible evidence of Williams' fall.

Although Williams did not recall in her deposition that she fell, she mentioned her fall to Dr. Topolosky in the course of receiving medical treatment from him. Statements made to a person rendering medical care describing an individual's medical condition are admissible as an exception to the hearsay rule. *Herron v. Anderson,* 254 Ill. App. 3d 365, 377, 626 N.E.2d 1035, 1044 (1993). Dr. Craddock's consultation report recounts Williams' description of how she fell. Ingram's entries on Williams' patient chart ("[patient] has sustained no injury") and Windler's "falls assessment" form first indicating a history of falls on February 24, 1996, are also admissible as business records pursuant to Supreme Court Rule 236(a) (145 Ill. 2d R. 236(a)). Those two documents support the inference that Williams fell on the night of February 23, 1996, or the morning of February 24, 1996. Plaintiffs' response to Covenant's motion for summary judgment showed that an issue of material fact existed as to whether Williams fell.

### E. Motion To Continue

Plaintiffs claim that the trial court abused its discretion in

denying their oral motion for a continuance to obtain an affidavit from their expert. Litigants do not have an absolute right to a continuance, and the granting or denial of a motion for continuance lies within the discretion of the trial court and will not be overturned absent an abuse of discretion. *Sands v. J.I. Case Co.*, 239 Ill. App. 3d 19, 26, 605 N.E.2d 714, 718 (1992). A decisive factor in reviewing a court's exercise of its discretion is whether the party seeking the continuance acted with due diligence in proceeding with the cause. *Sands*, 239 Ill. App. 3d at 27, 605 N.E.2d at 718.

Supreme Court Rule 191(b) (145 Ill. 2d R. 191(b)) permits the trial court to grant a continuance if a party cannot obtain an affidavit containing material facts if the party's affidavit "[names] the persons and [shows] why their affidavits cannot be procured and what affiant believes they would testify to if sworn, with his reasons for his belief." In the context of a traditional summary judgment motion, a party who fails to comply with Rule 191(b) may not complain on appeal that the trial court allowed an insufficient time for discovery. *Giannoble v. P&M Heating & Air Conditioning, Inc.*, 233 Ill. App. 3d 1051, 1064, 599 N.E.2d 1183, 1192 (1992).

However, a plaintiff should not be required to comply with Rule 191(b) when a defendant files a premature *Celotex*-type motion. See 4 R. Michael, Illinois Practice § 39.4, at 255 (1989). Although a plaintiff must comply with Rule 191(b) when a defendant has affirmatively shown that it is entitled to judgment, it is quite another matter to require such compliance when defendant, at an early stage, merely suggests that plaintiff is unable to prove his case. At that time, a plaintiff may not know what the witnesses will testify to before discovery is taken and accordingly be unable to comply with Rule 191(b). Rule 191(b) was adopted before *Celotex*-type motions were widely used and was never intended to apply to them.

Under the circumstances, plaintiffs were not required to comply with Rule 191(b) while seeking a continuance of the hearing on Covenant's premature motion for summary judgment. The trial court granted plaintiffs' motions to postpone their deadlines to disclose expert witnesses and to respond to Covenant's motion for summary judgment until they had taken the depositions of all occurrence witnesses. Plaintiffs' deadlines never arrived because they were not able to take the depositions of two nurse's aides. Rather than seeking a third continuance in October 1999, plaintiffs filed their response without taking any additional depositions. In their response, plaintiffs asserted that Covenant could not prematurely seek summary judgment based on their failure to establish the standard of care, Covenant's breach of the standard of care, and proximate cause

because those issues require them to disclose an expert opinion. After Covenant filed its rebuttal, plaintiffs filed a motion to strike Covenant's motion for summary judgment as untimely.

Plaintiffs perceived that Covenant made its motion for summary judgment to circumvent the trial court's case-management order and obtain an advantage by requiring plaintiffs to disclose their experts' opinions ahead of their deadline. Prior to the hearing on Covenant's motion for summary judgment, plaintiffs informed the trial court that they had a retained expert, but that they were not yet required to disclose an expert opinion. The trial court did not doubt that plaintiffs could obtain an expert opinion because they had attached a health professional's report to their complaint. Plaintiffs identified Dr. Schoedinger as their retained expert and the author of the health professional's report. Thus, plaintiffs proceeded diligently and had a reason for waiting to make their motion to continue until after the trial court denied their motion to strike. The trial court abused its discretion by not continuing the hearing on Covenant's motion for summary judgment to allow plaintiffs to obtain an affidavit from Dr. Schoedinger.

### F. Motion To Reconsider

A motion to reconsider invokes the sound discretion of the trial court, and, absent a showing that the trial court abused its discretion, we will not disturb the court's ruling on review. *Higgens*, 288 Ill. App. 3d at 546, 680 N.E.2d at 1091. Whether the trial court's ruling on a motion to reconsider achieved substantial justice between the litigants is relevant in assessing whether the trial court abused its discretion in ruling on the motion. A reviewing court should determine whether, under the circumstances, it would have been reasonable to compel the nonmoving party to go to trial on the merits of the case. *Higgens*, 288 Ill. App. 3d at 547, 680 N.E.2d at 1092.

Plaintiffs attached Dr. Schoedinger's affidavit to their motion to reconsider. Covenant argues that the trial court properly disregarded the affidavit because plaintiffs should have presented it at the summary judgment hearing and because the affidavit is not based on facts as required by Supreme Court Rule 191(a) (145 Ill. 2d R. 191(a)). We disagree. The trial court erred in denying plaintiffs' motion to reconsider because the affidavit was timely filed and provided a proper foundation for the expert's opinion on the issues of the standard of care, breach of the standard of care, and proximate cause. The affidavit sufficiently showed a question of material fact on those issues. Where plaintiffs indicate they will be able to obtain an expert, they must be given every opportunity to do so. See *Stevenson v. Nauton*, 71 Ill. App. 3d 831, 835, 390 N.E.2d 53, 56 (1979).

Rule 191(a) requires that affidavits in opposition to summary judgment shall be made on the personal knowledge of the affiant and shall not consist of conclusions but of facts admissible in evidence. Expert opinions are admissible in evidence (*Grant v. Petroff*, 291 Ill. App. 3d 795, 801, 684 N.E.2d 1020, 1024-25 (1997)) and are required in malpractice cases (*Purtill*, 111 Ill. 2d at 242, 489 N.E.2d at 872). Dr. Schoedinger reviewed Williams' medical records and six deposition transcripts. He described Williams' conditions that increased her risk of falling. He noted that Covenant's nursing staff failed to raise all four rails on Williams' bed and that Williams suffered injuries after leaving her bed and falling. Dr. Schoedinger's affidavit complied with Rule 191(a).

Covenant also challenged Dr. Schoedinger's affidavit as untimely. Covenant cites *Gardner v. Navistar International Transportation Corp.*, 213 Ill. App. 3d 242, 248, 571 N.E.2d 1107, 1111 (1991), for the proposition that a trial court may disregard an affidavit presented in a motion for reconsideration solely because all of the material in the affidavit had been available prior to the hearing on the motion for summary judgment and no explanation is given as to why this material was not offered in response to the motion for summary judgment before the hearing was held.

In *Hansbrough*, this court held that a plaintiff was not absolutely required to file counteraffidavits in opposition to a motion for summary judgment as of the hearing or be completely precluded from maintaining the cause of action where the plaintiff filed the complaint only 10 months earlier and discovery was still in process. *Hansbrough*, 141 Ill. App. 3d at 549, 490 N.E.2d at 188. Thus, summary judgment should be allowed only when the record indicates that a plaintiff has had extensive opportunities to establish her case but has failed in any way to demonstrate that she could show negligent acts or omissions through expert testimony or other evidence.

We find the facts here to be much closer to the situation in *Hansbrough* than *Gardner*. Plaintiffs had a reason not to offer Dr. Schoedinger's opinion in their response to Covenant's motion for summary judgment because they thought that Covenant's motion for summary judgment was premature. They filed a motion to strike, and only when the trial court denied their motion to strike were they required to obtain an expert's affidavit to respond to Covenant's motion for summary judgment. Further, their deadline for disclosing their expert had not arrived because Covenant failed to produce all occurrence witnesses for deposition. Plaintiffs believed that disclosing their expert witnesses prior to that deadline would offer an advantage to Covenant in expert discovery.

It would have been reasonable to compel Covenant to proceed to trial on the merits. Plaintiffs diligently pursued their claim throughout the discovery process and obtained continuances because Covenant failed to produce witnesses for deposition. Plaintiffs did not violate any discovery deadlines. Thus, the trial court abused its discretion in disregarding Dr. Schoedinger's affidavit and denying plaintiffs' motion to reconsider.

## III. CONCLUSION

For the reasons stated, we reverse the trial court's grant of Covenant's motion for summary judgment and remand for further proceedings.

Reversed and remanded.

GARMAN and KNECHT, JJ., concur.