VICTORY MEMORIAL HOSPITAL ASSOCIATION, Plaintiff, v. SCHMIDT, GARDEN & ERICKSON, Defendant and Third-Party Plaintiff-Appellant (Hyre Electric Company, Third-Party Defendant-Appellee).

Second District   No. 2—86—0680

Opinion filed July 31, 1987.

Thomas R. Schutt and Christine L. Olson, both of McKenna, Storer, Rowe, White & Farrug, of Chicago (James P. DeNardo, of counsel), for appellant.

Linda E. Spring, of Wildman, Harrold, Allen & Dixon, of Waukegan (Paul S. Chervin, of counsel), for appellee.

JUSTICE HOPF delivered the opinion of the court:

This matter springs from a third-party action for contribution. Third-party plaintiff, Schmidt, Garden & Erickson, appeals from a trial court order which granted a motion for directed verdict made by third-party defendant, Hyre Electric Company, after both parties had rested. While Schmidt had presented its case in chief, Hyre rested without offering any evidence. Schmidt asserts that the trial court erred in granting Hyre's motion since a *prima facie* case for contribution had been presented and was not refuted by Hyre.

In 1976 Victory Memorial Hospital (Victory) retained the architectural firm of Schmidt, Garden & Erickson (Schmidt) to design the interior of the fifth and sixth floors of the west wing of the hospital. Schmidt prepared, among other things, the plans and specifications for the ventilation system which included the fire detection system. The fire detection plan was designed to detect smoke, sound an alarm, and close the smoke dampers. Jenkins and Boller (Jenkins), which was hired as general contractor for the project, retained Hyre Electric Company (Hyre) for the electrical work and Marley Cooling Tower Company (Marley) as the air conditioning contractor.

In February 1981 a fire occurred in a respiratory therapy classroom on the sixth floor of the west wing. The costs incurred by Victory to repair the fire damage were paid and/or reimbursed by the hospital's insurance company. Subsequently the insurer filed suit against Schmidt, in Victory's name, for damages resulting from the fire. Victory's complaint alleged that the proximate cause of the damages was the negligent design, construction, and installation of the fire detection system. Schmidt, in turn, sued Jenkins, Hyre, and Marley for contribution.

Pursuant to an agreement and a good-faith release, Victory dismissed its action against Schmidt in February 1986. The release recited that Schmidt and Jenkins jointly paid $160,000 to Victory in order to be released from all claims and that the other defendants in Schmidt's contribution action were also released. While Schmidt dismissed its third-party complaint against Jenkins and Marley, it reserved its action for contribution against Hyre.

At the trial of the contribution issue evidence offered during plaintiff's case showed that Schmidt's plans called for the smoke detector in the respiratory therapy room to be located on the intake, or suction, side of the ventilating fan. The detector itself was to consist of air sampling tubes which extended across the full width of the duct in which it was located. Hyre installed the smoke detector on the discharge, rather than the intake, side of the fan. The sampling tubes in the detector did not extend the full width of the duct.

By the time Donald Wasson, the president of Victory, entered the hospital on the morning of the fire, the firemen were already there. The sprinklers had gone off and water was running down the stairs and elevator shafts. Wasson testified that the door to the respiratory therapy room had been left open in violation of a hospital rule.

A few weeks after the real fire a test fire was set in the respiratory therapy room. Also, the exhaust unit was filled with smoke from a smoke bomb. The hospital's maintenance superintendent testified that nothing happened as a result of these tests. No further explanation was asked or given. Other testimony, elicited on cross-examination, indicated that the particular detector designated by Schmidt was not suitable for the location where it had been specified in the respiratory therapy room main air duct and that, during repair after the fire, other kinds of detectors were placed in different locations. While Hyre acknowledged an obligation to comply with manufacturer recommendations for installation, conflicting testimony was offered as to whether or not those recommendations were actually met.

The hospital president, Wasson, gave testimony regarding Victory's damages. He indicated that he had submitted a proof of loss statement to the hospital's insurance company for $195,034.97. After the repair work was done Victory received insurance proceeds in the total amount of $187,534.97.

Schmidt's expert, John Campbell, testified that the smoke detector had not been installed in accord with Schmidt's plans or specifications, manufacturer's recommendations, or good fire protection practice. He opined that if the detector had been properly installed it would have given an alarm within 30 to 60 seconds after the fire was

fully burning. He also expressed the opinion that had the smoke detector been properly installed in the fan and had a hospital staff person responded to the alarm with a portable fire extinguisher, the damages would have been $3,000 to $4,000. In the absence of use of a portable extinguisher, however, he approximated $32,000 in damages between the alarm and the arrival of the fire department.

At the close of plaintiff's case Hyre moved unsuccessfully for directed verdict. Counsel for Hyre then requested time, and a short recess was taken. When court reconvened Hyre rested its case, and both parties renewed their motions for directed verdict. This time the court granted Hyre's motion. Schmidt's post-trial motion was denied, and this appeal followed.

■ This matter was disposed of by a directed verdict in favor of Hyre. A directed verdict in favor of a defendant is appropriate when the plaintiff has not established a *prima facie* case. In *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 407 N.E.2d 43, our supreme court noted that the *prima facie* case standard ordinarily is applicable to both jury and nonjury cases. The court commented: "In any case in which the plaintiff has failed to make out a *prima facie* case, *i.e.*, he has not presented at least some evidence on every element essential to his cause of action, the defendant is entitled to judgment in his favor as a matter of law." (81 Ill. 2d 151, 154-55, 407 N.E.2d 43.) Accordingly, in order for Schmidt to withstand a motion for directed verdict it was required to present some evidence on every element essential to an action for contribution.

The elements of contribution are found basically in "An Act in relation to contribution among joint tortfeasors" (Contribution Act or Act) (Ill. Rev. Stat. 1985, ch. 70, par. 302). Section 302(b) of the Act states:

> "The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tortfeasor is liable to make contribution beyond his own pro rata share of the common liability." (Ill. Rev. Stat. 1985, ch. 70, par. 302(b).)

The parties disagree as to whether this language requires a plaintiff in contribution to show, as an element of his case, the amount he paid for the settlement with the injured party in the underlying case. Hyre contends that such a showing is necessary in order to make possible a determination of the amount plaintiff paid in excess of its fair share of the common liability. Schmidt acknowledges that it did not offer evidence to show how much it paid in its settlement with Victory but

steadfastly maintains that the Act requires the jury to assess only fault, not dollar damages, and to assign a percentage figure of fault to each party to the contribution action. Then, according to plaintiff, the court may, as a matter of law, apply the percentages to the amount paid to the injured party by the plaintiff and enter judgment accordingly. Plaintiff concludes that the jury need not know how much it paid in the underlying suit. We find no merit in this argument.

■■ ■ The Contribution Act created a mechanism to ensure the equitable sharing of payment of damage awards by joint tortfeasors. Through the right of contribution each defendant in the tort action bears the loss for harm inflicted in proportion to his responsibility for the tortious act which caused the harm. (*Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344, 349, 459 N.E.2d 935; *Holmes v. Sahara Coal Co.* (1985), 131 Ill. App. 3d 666, 676, 475 N.E.2d 1383.) According to the language of the Act itself, a tortfeasor is entitled to contribution only when he has paid an amount in excess of his *pro rata* share of liability. Recovery is limited to the amount of the excess. In our opinion both the language and the purpose of the Act anticipate that a plaintiff in contribution must plead and offer evidence of the amount he paid to the injured party, along with evidence of the joint tortfeasors' fault, so the fact finder has a basis for determining what, if any, amount was paid by plaintiff over and above his fair share of the joint liability.

■ In light of the statutory objective of equitable sharing of damages payments, we find it unreasonable to argue that a plaintiff in contribution need not show the amount paid by him in the underlying action. In the case now before us Schmidt maintains that the trial judge could have applied percentages of fault, as determined by the jury, to the dollar amount of the settlement paid to Victory. Even this position, however, assumes that the dollar amount is somehow available for the judge's use. The appropriate and most efficient way to make the amount available is to place it in evidence, like any other evidence, during trial. Since it is the plaintiff who seeks to recover the excess paid by him, it is up to the plaintiff to show the amount of that excess.

Moreover, even if it had been appropriate for the trial judge to do what Schmidt asked, the proper amount still could not have been calculated in this case. Schmidt requested that the court take judicial notice of the amount of the settlement as recited in the settlement and release which were part of the court file. According to those documents, however, Jenkins was included in the settlement. The separate amounts paid by Schmidt and Jenkins are not set forth. Rather, one

lump sum is stated for both defendants. In the absence of the specific amount paid by Schmidt, not even the judge would have been able to determine the proper amount of recovery.

Since plaintiff did not provide any means of determining how much it could recover from Hyre, we must conclude that it did not establish a *prima facie* case for contribution. Therefore, the trial court did not err in granting Hyre's motion for directed verdict.

The conclusion we reach is well supported by *Houser v. Witt* (1982), 111 Ill. App. 3d 123, 443 N.E.2d 725, a case which, while not identical to the case at bar, is strikingly similar. *Houser* resolved an action for contribution brought by a defendant against one of two plaintiffs in the underlying action. The defendant-driver had settled with the plaintiffs, a host driver and his wife, and sought contribution from the husband/host driver. Neither the settlement agreement nor the release reflected the amount of the settlement attributable to the wife's claim. The trial court directed a verdict in favor of the husband. On appeal the court found that, in the absence of the amount paid to the wife, there was no way to determine how much the defendant-driver had paid on the wife's claim in excess of his *pro rata* share. The defendant-driver's right of contribution was not established, and the directed verdict against him was affirmed.

The *Houser* court recognized that if the husband was at fault, the defendant-driver had paid more than his *pro rata* share since, presumably, he had paid the full amount of the wife's claim in the settlement. Nevertheless, the court held that in order to establish a right to contribution a party must allege and the evidence must show the amount he paid in excess of his just share of the joint liability. The court cited *Cunningham v. Lawrence* (1959), 16 Ill. 2d 201, 157 N.E.2d 50, and *Schaefer v. Dippel* (1928), 250 Ill. App. 184, in support of its holding. In *Cunningham*, contribution relief was denied because the defendant failed to allege either that he had paid more than his fair share of joint indebtedness on a note and mortgage or what the excess amount was that he paid. The *Schaefer* court granted relief to a plaintiff seeking contribution where the complaint alleged that plaintiff had paid $5,012.10 more than the defendant in satisfaction of a joint personal deficiency judgment and the evidence reflected that plaintiff had contributed more than his share towards the settlement of the deficiency.

While acknowledging that neither *Cunningham* nor *Schaefer* involved joint tortfeasors, the *Houser* court found the two cases to be persuasive analogy. The relationship between the common law principles of contribution, as set forth in *Cunningham* and *Schaefer*, and

the Contribution Act was the subject of the following discussion:

"There is nothing in the Contribution Act, nor in subsequent case law, to negate the proposition that one seeking contribution must be able to establish the amount to which he is entitled. The Contribution Act is novel in that it is made applicable to joint tort feasors, but as to principles of contribution generally, it is a codification of existing common law." (*Houser v. Witt* (1982), 111 Ill. App. 3d 123, 126-27, 443 N.E.2d 725.)

Thus, *Houser* incorporated common law contribution rules into the Contribution Act.

We find the reasoning of *Houser* to be sound and persuasive, particularly in light of the language of the Contribution Act, which, as we noted above, appears to anticipate that a plaintiff will offer evidence of how much he paid to the injured party. There seems to be no reason why the Act should not be perceived as codifying the common law rule that the right to contribution requires allegation and evidence of the amount the plaintiff has paid in excess of his *pro rata* share of joint liability.

■ Plaintiff offers two primary bases for its contention that it did not need to put the relevant dollar amount into evidence. It focuses first on language in *Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344, 459 N.E.2d 935, which states: "A claimant seeking [contribution] need show only a common injury which his acts and those of the contributor combined to bring about and which makes them subject to liability in tort ***." (99 Ill. 2d 344, 349, 459 N.E.2d 935.) It appears plaintiff took this language literally as a delineation of a *prima facie* case for contribution and concluded that proof of the amount it had paid Victory was not needed.

Plaintiff's reliance on *Heinrich* is not justified. The cited comment was made in *dicta* explaining that contribution and indemnification are predicated on different theories of recovery. It was meant only to demonstrate that common liability in tort is all that is required to justify the risk sharing of contribution while the total risk shifting of indemnity requires a good deal more. The remark in no way purported to set forth all the elements of a *prima facie* case for contribution.

Plaintiff relies also on the Illinois Pattern Jury Instructions, Civil, No. 600.00 *et seq.* (2d ed. Supp. 1986) (hereinafter IPI Civil 2d) on contribution which had been proposed at the time of trial and have since been made part of IPI Civil 2d by the Illinois Supreme Court Committee on Jury Instructions in Civil Cases. Plaintiff correctly points out that the instructions do not speak to the jury in terms of specific dollar amounts. For example, IPI Civil 2d No. 600.09 states

only that plaintiff "has paid a sum of money to [defendant] in settlement of [the injured party's] claim." Similarly, the verdict form (IPI Civil 2d No. 600.16) merely recites: "We, the jury, apportion damages as follows ***," and directs the jury to fill in the names of the parties and a percentage for each party. No dollar amount is required.

While the IPI Civil 2d contribution instructions do not specifically call for the jury to apportion actual dollar amounts, they leave no doubt that once the percentage of fault is determined, it is to be applied to the settlement sum paid by plaintiff in order to determine what, if any, recovery is due. IPI Civil 2d No. 600.09 states: "[Plaintiff] has paid a sum of money to [the injured party] ***. [Plaintiff] now claims that he is entitled to contribution from [defendant] for a percentage of that sum paid." Thus, it is clear that at some point the dollar figure paid by plaintiff must be made known. There is nothing in the instructions which undermines our belief that that figure should be established through evidence properly presented at trial.

On a final note we recognize that the procedural status of this case is unusual in that the directed verdict was granted after both parties had rested. In the absence of any evidence from Hyre, however, it is apparent the grant of the motion was based on Schmidt's failure to make out a *prima facie* case. Moreover, even if Hyre had presented evidence and the case had been appealed, the result would have been the same because Schmidt still would not have adequately established its case. While the trial court should have granted defendant's motion at the close of Schmidt's case, its failure to do so worked no prejudice to Schmidt.

Accordingly, the order of the circuit court of Lake County granting a directed verdict in favor of defendant is affirmed.

Affirmed.

NASH and WOODWARD, JJ., concur.