MUIRFIELD VILLAGE-VERNON HILLS, LLC, *et al.*, Plaintiffs-Appellants, v. K. REINKE, JR., AND COMPANY *et al.*, Defendants-Appellees.

Second District    No. 2—03—0116

Opinion filed May 13, 2004.—Rehearing denied June 14, 2004.

Robert C. Moore and William L. Wood, both of Stone & Moore, Chtrd., of Chicago, for appellants.

William E. Spizzirri, of Kralovec & Marquard, Chtrd., of Chicago, for appellee K. Reinke, Jr., & Co.

Brian J. Hunt and Christina D. Ketcham, both of Williams & Montgomery & John, Ltd., of Chicago, for appellee Denk & Roche Builders, Inc.

Thomas A. Appel and Drew C. Rhed, both of Appel & Appel, of Lansing, for appellee Air-Rite Heating & Cooling, Inc.

David J. Kiesler, of Kiesler & Kanyock, of Chicago, for appellee JMB Electric, Inc.

Jennifer Jerit Johnson and Kristen S. Burns, both of Tressler, Soderstrom, Maloney & Priess, of Chicago, for appellee Keystone Mechanical Industries, Inc.

J. Randall Davis and James A. Berglund, both of Cassiday, Schade & Gloor, of Waukegan, for appellee R.M. Sellegren & Associates, Inc.

PRESIDING JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiffs, Muirfield Village-Vernon Hills, LLC, and Muirfield, LLC, appeal from the circuit court of Lake County's dismissal with prejudice of their third amended complaint and the denial of their mo-

tion to reinstate and for leave to file a fourth amended complaint. Plaintiffs argue that the third amended complaint stated a claim for contribution against defendants K. Reinke, Jr., & Co., Denk & Roche Builders, Inc., Air-Rite Heating & Cooling, Inc., JMB Electric, Inc., Keystone Mechanical Industries, Inc., and R.M. Sellergren & Associates, Inc., and that the trial court abused its discretion in denying plaintiffs leave to file a fourth amended complaint against defendants. We affirm in part and reverse in part.

The following facts are taken from plaintiffs' third amended complaint and the record. Muirfield, LLC, acted as the general contractor in the construction of a home for Kerry and Jodi Strain in the subdivision known as Gregg's Landing. Muirfield Village-Vernon Hills, LLC, was the owner of the project. Defendants, as subcontractors, all provided services to Muirfield, LLC, in the construction of the Strain home. Reinke provided insulation installation, Denk & Roche provided siding and carpentry services, Sellergren provided drywall and drywall installation, Air-Rite provided heating, ventilation, flashing, and air conditioning installation, JMB Electric provided services related to the electrical systems, and Keystone provided services related to the plumbing systems.

During the construction of the Strains' home, one or more of defendants allowed an excess of moisture into the interior areas of the home. They either failed to close up the house during construction or failed to keep the materials dry prior to installation. This led to the growth of mold and bacteria within the Strains' home. On January 13, 2000, the Strains took possession of the home and moved in. About two months later, the Strains detected a putrid odor in their home. On July 26, 2000, the Strains were advised to vacate the home due to the presence of abnormally high levels of mold and bacteria in the home. In addition to moving out of their home, the Strains experienced damages to their personal effects.

On June 19, 2000, the Strains filed suit against Reinke and Denk & Roche, alleging that they had negligently installed wet or saturated insulation or carpentry materials in their home, which led to the growth of unacceptably high levels of mold and bacteria. The Strains and various Muirfield entities and agents entered into mediation in an attempt to resolve the suit. On September 22, 2000, the Strains, plaintiffs, Zale Homes, and Hearthstone Advisors entered into a handwritten settlement agreement whereby plaintiffs, Zale Homes, and Hearthstone Advisors would buy back the Strains' home, pay $59,000 for other costs and damages to the Strains, and pay Amica Insurance Company, the Strains' insurer, $49,200 in exchange for the release from liability of Muirfield, LLC, Muirfield Village-Vernon Hills,

LLC, Zale Homes, and Hearthstone Advisors, and the assignment to those entities of all of the Strains' legal rights. (Zale Homes and Hearthstone Advisors are not parties to this appeal.)

On October 25, 2001, plaintiffs filed their first amended complaint. This complaint added Air-Rite, JMB Electric, Sellergren, and Keystone as parties defendant, and substituted plaintiffs, both individually and as assignees of the Strains, as parties plaintiff. The first amended complaint set forth three claims against each of the six defendants, alleging the negligence of each individual defendant in the performance of its particular work, alleging negligence against all defendants for failing to properly secure and protect the home from the intrusion of moisture, and alleging breach of contract against each defendant for failing to procure insurance. The settlement agreement between plaintiffs and the Strains was not attached to the first amended complaint. Instead, plaintiffs alleged the existence of the settlement agreement, that it was confidential, and that the Strains had assigned their rights to "Muirfield."

On April 25, 2002, plaintiffs filed their second amended complaint. This complaint alleged three counts against each defendant, namely, negligent construction, breach of contract for failing to procure insurance, and "contractual contribution." In addition, plaintiffs again did not attach the settlement agreement to the complaint. Instead, plaintiffs alleged the existence of a confidential settlement agreement with the Strains, and quoted language from the agreement by which the Strains released "Muirfield [sic]-Vernon Hills, LLC, Muirfield, LLC, Zale Homes and Hearthstone Advisors" and their subcontractors. Defendants filed motions to dismiss the second amended complaint. In addition, defendants sought to compel plaintiffs to disclose the terms of the settlement agreement with the Strains.

The trial court dismissed the second amended complaint in its entirety, but gave plaintiffs the opportunity to file a third amended complaint. In addition, the trial court ordered plaintiffs to produce the settlement agreement to defendants. The parties agreed to the entry of a protective order against the disclosure of any settlement agreements, releases, or other settlement documents. On October 1, 2002, after plaintiffs failed to file their third amended complaint within the trial court's original time limit, they were granted leave, over defendants' objections, to file the third amended complaint.

This complaint contained only one count for contribution against each defendant. Additionally, plaintiffs attached a typed document entitled "settlement release," which was executed in July and August of 2002. The document was signed by the Strains and their insurer, but not by plaintiffs. The parties released in this document included

"Muirfield-Vernon Hills, LLC, sometimes referred to as Muirfield Village-Vernon Hills, LLC, and Muirfield, LLC, their related companies *** including Zale Homes and Hearthstone Advisors, Inc." In addition, each defendant was expressly released by name. Defendants moved to dismiss the third amended complaint on the grounds that (1) substituting the 2002 settlement release document for the September 22, 2001, settlement agreement was contrary to the "mend-the-hold" doctrine, (2) plaintiffs did not allocate the amounts that each paid in the settlement with the Strains, making it impossible to determine whether any plaintiff or other Muirfield entity paid more than its *pro rata* share of liability, and (3) plaintiffs could not recover in tort any of the amounts paid to the Strains for the buyback of their home as these sums constituted economic losses. On December 3, 2002, the trial court expressly denied the portions of the motions to dismiss relying on the "mend-the-hold" doctrine, and granted with prejudice the portions of the motions to dismiss based on plaintiffs' failure to plead a claim in contribution and on the economic loss rule. Apparently, at that point, plaintiffs orally moved for leave to file a fourth amended complaint. This oral motion was denied.

On January 2, 2003, plaintiffs filed a motion to reinstate their cause of action and for leave to file a fourth amended complaint. Plaintiffs attached a copy of the proposed fourth amended complaint to their motion. The proposed fourth amended complaint contained two counts against each defendant, one for contribution and one for breach of contract. The contribution counts alleged that "liability is apportioned 100% to plaintiffs due to the fact they are the same entity," and that plaintiffs had paid more than their proportionate share of the liability. The breach of contract counts alleged that defendants had failed to perform their services in a workmanlike manner.

On January 14, 2003, Reinke filed a suggestion of record that plaintiffs had not filed a postjudgment motion sufficient to toll the 30-day period following the entry of a final order and that the trial court's jurisdiction had lapsed. Additionally, Reinke filed a response in opposition to plaintiffs' motion, requesting that the trial court deny the motion and seeking sanctions against plaintiffs pursuant to Supreme Court Rule 137 (155 Ill. 2d R. 137). The other defendants also filed or adopted responses in opposition to plaintiffs' motion. On February 4, 2003, the trial court denied plaintiffs' motion to reinstate and for leave to file a fourth amended complaint. In addition, the February 4, 2003, order stated that Reinke's "Motion For Sanctions Is Not Ruled Upon." On March 5, 2003, plaintiffs filed their notice of appeal.

■ Before turning to the issues raised on appeal, we must first

contend with what could be termed a "housekeeping" issue. After this cause was briefed and submitted to this court for deliberation, plaintiffs and Reinke entered into a settlement agreement among themselves. Plaintiffs and Reinke submitted a joint motion to dismiss with prejudice Reinke from this action, with each party representing that it had dropped all claims against the other. Denk & Roche filed an objection to the motion, raising concerns that, as it had adopted Reinke's briefs and arguments on appeal, it could be prejudiced by Reinke's dismissal from this action. Denk & Roche further suggested that granting the motion could be construed as this court's approval of the settlement agreement among plaintiffs and Reinke (which those parties did not submit to this court), and that it could prejudice Denk & Roche's rights to contribution against Reinke and the other defendants. Due to the timing of plaintiffs' and Reinke's joint motion to dismiss, we choose to resolve it with the case.

Upon consideration of the joint motion to dismiss, we grant it, but with the following qualifications. First, our grant of the motion to dismiss is not a finding in any way concerning the good faith of the settlement agreement or the fairness of its terms. Our order also does not disturb any rights any of defendants may have to setoff or contribution from Reinke or each other. We also allow the briefs on appeal submitted by Reinke to stand as Denk & Roche's briefs and arguments on appeal and note that Reinke's dismissal from this action does not prejudice Denk & Roche's rights in this appeal in any way.

Next, we turn to the actual issues raised by this appeal. However, before we can address plaintiffs' arguments on appeal, we must first resolve two issues regarding our jurisdiction over this appeal. Defendants Air-Rite, Denk & Roche, and Sellergren all urge that plaintiffs' postjudgment motion to reinstate and for leave to file an amended complaint be held to be insufficient to toll the 30-day time limit for filing a notice of appeal. These defendants argue that plaintiffs' motion was not a postjudgment motion within the meaning of section 2—1203(a) of the Code of Civil Procedure (Code) (735 ILCS 5/2—1203(a) (West 2002)).

■ Supreme Court Rule 303(a) (155 Ill. 2d R. 303(a)) provides:

"[A] notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from, or, if a timely post-trial motion directed against the judgment is filed, whether in a jury or a nonjury case, within 30 days after the entry of the order disposing of the last pending post-judgment motion."

Section 2—1203(a) of the Code provides:

"In all cases tried without a jury, any party may, within 30 days

after the entry of the judgment or within any further time the court may allow within the 30 days or any extensions thereof, file a motion for a rehearing, or a retrial, or modification of the judgment or to vacate the judgment or for other relief." 735 ILCS 5/2—1203(a) (West 2002).

■ Substantively, plaintiffs' motion to reinstate and for leave to file an amended complaint seeks only leave to file a fourth amended complaint. The caption states that the motion is to reinstate plaintiffs' cause of action, and the prayer for relief requests that the trial court reinstate the cause and allow plaintiffs to file their fourth amended complaint. The issue is simple: Is a motion that substantively seeks only leave to file an amended pleading, yet requests the relief that the matter be reinstated following a dismissal with prejudice, sufficiently directed against the judgment to come within the ambit of section 2—1203(a) of the Code? We hold that it is.

Our resolution of this issue is guided by the recent case of *Kingbrook, Inc. v. Pupurs*, 202 Ill. 2d 24 (2002). There, our supreme court addressed the issue of what degree of detail must be included in a motion to reconsider for such a motion to qualify as a postjudgment motion. *Kingbrook*, 202 Ill. 2d at 25. Our supreme court held that neither the Code nor the supreme court rules require any degree of specificity in a postjudgment motion. *Kingbrook*, 202 Ill. 2d at 31. The court supported its decision with practical reasons; for example, an obvious error by the trial court could be corrected merely by asking for a rehearing, but if some specificity were required, then the motion might not qualify as a postjudgment motion, which could cause the trial court to lose jurisdiction to enter any order. *Kingbrook*, 202 Ill. 2d at 32.

This case presents a step beyond *Kingbrook*—what happens when a party presents a motion with considerable detail, but the motion substantively is directed only at securing leave to file an amended complaint. Ordinarily, we would find that this would not be directed at the judgment and, therefore, would not be a postjudgment motion for purposes of the Code and supreme court rules. See *Andersen v. Resource Economics Corp.*, 133 Ill. 2d 342, 346 (1990) (motion for leave to amend pleading not a valid postjudgment motion capable of extending the time for filing a notice of appeal). However, in addition to requesting leave to amend their complaint, plaintiffs also specifically request that the trial court reinstate their cause of action. We interpret plaintiffs' request to reinstate their cause to be a request to modify or vacate the trial court's judgment of dismissal with prejudice, so as to allow the cause to continue. Indeed, "reinstate" is defined as "to instate again : place again (as in possession or in a former position)"; and "to restore to a proper condition : replace in an original or

equivalent state." Webster's Third New International Dictionary 1915 (1986). Under section 2—1203(a) of the Code, a motion seeking a modification or vacation of the judgment qualifies as a postjudgment motion. Thus, plaintiffs' motion possesses no proper substance or detail, but properly requests appropriate relief to qualify as a postjudgment motion. Under *Kingbrook*, a motion that does no more than request to strike or vacate the "with prejudice" portion of the order would be sufficient to toll the 30-day time period in which to file a notice of appeal. *Kingbrook*, 202 Ill. 2d at 33. We believe that it would be contrary to the supreme court's intent in *Kingbrook* to hold that a motion with no detail but requesting the appropriate relief is sufficient to toll the 30-day time period, while a motion with plenty of irrelevant detail requesting the same relief is insufficient to qualify as a postjudgment motion. We will not penalize plaintiffs for incorporating more than they needed to in the motion, where they have at least requested the appropriate relief specified in section 2—1203(a) of the Code. We find, therefore, that plaintiffs' motion to reinstate and for leave to file an amended complaint was sufficient to toll the 30-day period to file a notice of appeal.

This, however, does not end our inquiry. Our review of the record shows another hurdle to appellate jurisdiction, although none of the parties raise it in their arguments. We note that Reinke filed a response to plaintiffs' motion to reinstate and for leave to file a fourth amended complaint. In that response, Reinke asked the trial court to impose sanctions on plaintiffs for making a frivolous pleading. The trial court did not rule upon Reinke's request for sanctions. Following the denial of plaintiffs' motion to reinstate, Reinke did not raise further the issue of sanctions, either by a separate motion or by requesting a ruling by the trial court.

This presents the question of whether there is an open motion for sanctions. Ordinarily, " 'no appeal may be taken from an otherwise final judgment entered on a claim when a section 2—611 claim [motion for sanctions] remains to be resolved, absent a finding pursuant to Rule 304(a) [(155 Ill. 2d R. 304(a))] that there is no just reason to delay enforcement or appeal.' " *John G. Phillips & Associates v. Brown*, 197 Ill. 2d 337, 340 (2001), quoting *Marsh v. Evangelical Covenant Church*, 138 Ill. 2d 458, 468 (1990). We find the present circumstances, however, to be sufficiently different from those in *Phillips* to render *Phillips* and its line of cases distinguishable.

Here, the trial court did not rule upon Reinke's request for sanctions. No reason was specified. We cannot say whether the trial court felt that the request was without merit, whether Reinke had not properly raised the issue as it did not file a separate motion for sanc-

tions, or whether there was any other reason. We do know that Reinke never pressed the trial court for a ruling or filed a separate motion for sanctions. The party filing a motion has the responsibility to bring it to the trial court's attention and have it resolved. *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 512 (2001). Unless there is some indication to the contrary, where no ruling has been made on a motion, we will presume that the motion was waived or abandoned. *Twardowski*, 321 Ill. App. 3d at 512-13. Here, Reinke was aware that the trial court declined to address its request for sanctions. Reinke and the other defendants let the matter drop and did not either notice up the motion (if motion it was) or file a separate motion for sanctions. Further, defendants have not raised this issue as a bar to our jurisdiction over this appeal. Our review of the record convinces us that Reinke and the other defendants interpreted the trial court's refusal to rule on the motion as a *de facto* determination that it was meritless and acquiesced in that determination. Thus, Reinke's failure to pursue its request for sanctions supports and confirms the presumption that it abandoned its request for sanctions. *Twardowski*, 321 Ill. App. 3d at 512-13. Accordingly, we find that Reinke abandoned its request for sanctions and that plaintiffs' motion to reinstate was a proper postjudgment motion, so that its notice of appeal was timely filed. As a result, we find that we have jurisdiction to consider plaintiffs' contentions on appeal.

We now turn to the issues plaintiffs raise on appeal. Plaintiffs contend that the trial court erred in dismissing their third amended complaint. Specifically, plaintiffs maintain that the third amended complaint stated a claim for contribution and did not run afoul of the economic loss rule. Plaintiffs also argue that the trial court abused its discretion in denying their motion for leave to file a fourth amended complaint. Plaintiffs maintain that the proposed fourth amended complaint would have cured any deficiencies in their preceding complaint and, therefore, should have been allowed.

We first address plaintiffs' contentions regarding their third amended complaint. This cause comes before us following the trial court's dismissal with prejudice of plaintiffs' third amended complaint pursuant to defendants' motions to dismiss brought under section 2—615 of the Code (735 ILCS 5/2—615 (West 2002)). A motion to dismiss pursuant to section 2—615 of the Code challenges the legal sufficiency of the complaint. *Wakulich v. Mraz*, 203 Ill. 2d 223, 228 (2003). The trial court must determine whether the allegations of the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a claim upon which relief may be granted. *Wakulich*, 203 Ill. 2d at 228. In making this determination, the trial court must

accept as true all well-pleaded facts in the complaint. *Wakulich*, 203 Ill. 2d at 228. We review the trial court's determination *de novo. Wakulich*, 203 Ill. 2d at 228.

Plaintiffs bring their claim for contribution under the Joint Tortfeasor Contribution Act (Act) (740 ILCS 100/0.01 *et seq.* (West 2002)). Section 2(a) of the Act provides that, "where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them." 740 ILCS 100/2(a) (West 2002). Section 2(b) of the Act provides:

> "The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tortfeasor is liable to make contribution beyond his own pro rata share of the common liability." 740 ILCS 100/2(b) (West 2002).

Plaintiffs argue that they properly alleged a claim for contribution under the Act. Plaintiffs point out that they alleged that there was a contractor-subcontractor relationship between themselves and defendants. Plaintiffs alleged that they reasonably settled the Strains' claim and received the assignment of the Strains' claims against defendants. Plaintiffs also alleged that defendants' tortious acts gave rise to the liability against both plaintiffs and defendants. According to plaintiffs, these allegations sufficiently stated a claim for contribution. Defendants counter by arguing that, because plaintiffs did not apportion the payments made to the Strains among the four entities listed in the settlement document attached to the third amended complaint, it is impossible to determine by how much each plaintiff exceeded its *pro rata* share of the common liability. According to defendants, this failure renders the claim legally insufficient. We agree with defendants.

■ In order to properly state a claim for contribution, the plaintiff in contribution must allege that it and the defendant in contribution are both subject to liability in tort to the injured party, and that the liability of the plaintiff and the defendant in contribution arises out of the same injury. *Alper v. Altheimer & Gray*, 257 F.3d 680, 684 (7th Cir. 2001). In addition, the plaintiff in contribution must plead the amount it paid to the injured party, so that, ultimately, the fact finder can determine what amount, if any, was paid by the plaintiff in contribution over its fair share of the common liability. *Victory Memorial Hospital Ass'n v. Schmidt, Garden & Erickson*, 158 Ill. App. 3d 931, 935 (1987). Here, plaintiffs have not pleaded what amount each

plaintiff paid to the Strains. Accordingly, plaintiffs have failed to plead the essential elements necessary to state a claim for contribution. We hold, therefore, that the trial court properly dismissed plaintiffs' third amended complaint.

Plaintiffs appear to argue generally that, because they provided the total amount they paid to the Strains, the fact finder would be able to assign the parties their proportionate liabilities following the presentation of evidence. It then would become a simple mathematical exercise to determine the amount each plaintiff paid in excess of its *pro rata* share of the common liability. It is precisely this argument that was rejected by the court in *Victory Memorial*. There, a hospital contracted with an architectural firm to design the interiors of the fifth and sixth floors of the hospital. Among the services the architect provided was the design and specifications for a fire detection system. The architect retained a general contractor to manage the project, an electrician, and an air conditioning contractor to install the components of the fire detection system. *Victory Memorial*, 158 Ill. App. 3d at 932. At some time after the installation was completed, a fire occurred on the sixth floor of the hospital. The architect and the general contractor jointly paid $160,000 to the hospital to settle the hospital's negligence claim against them and the other defendants. The architect and the general contractor maintained a claim for contribution against the electrician. *Victory Memorial*, 158 Ill. App. 3d at 932-33. The architect presented evidence regarding the amount of the damages that the hospital sustained and evidence showing that the fire detectors had not been properly installed. The electrician presented no evidence and received a directed verdict in its favor, as the architect had not established a *prima facie* case. *Victory Memorial*, 158 Ill. App. 3d at 933-34.

The architect argued to the appellate court:

> "[T]he Act requires the jury to assess only fault, not dollar damages, and to assign a percentage figure of fault to each party to the contribution action. Then, according to [the architect,] the court may, as a matter of law, apply the percentages to the amount paid to the injured party by the plaintiff and enter judgment accordingly." *Victory Memorial*, 158 Ill. App. 3d at 935.

The court rejected this argument, holding:

> "[B]oth the language and the purpose of the Act anticipate that a plaintiff in contribution must plead and offer evidence of the amount he paid to the injured party, along with evidence of the joint tortfeasors' fault, so the fact finder has a basis for determining what, if any, amount was paid by plaintiff over and above his fair share of the joint liability." *Victory Memorial*, 158 Ill. App. 3d at 935.

Here, plaintiffs did not plead the amount each paid in the settlement with the Strains. This situation is identical to that in *Victory Memorial*, where the architect did not plead or offer evidence on the amount that it and the general contractor paid in the settlement with the hospital. Therefore, *Victory Memorial* compels us to reject plaintiffs' argument.

We also note that, although *Victory Memorial* involved a directed verdict, this does not serve to distinguish its holding from application in this case. The issue in *Victory Memorial* involved whether the plaintiff had established a *prima facie* case, or in other words, had presented evidence establishing all of the essential elements of its claim. Here, the issue is whether plaintiffs pleaded all of the essential elements of their claim. Thus, the court's holding on what elements are necessary to establish a *prima facie* case also sets forth the requirements necessary to plead the essential elements of the claim.

Plaintiffs attempt to distinguish *Victory Memorial*. They point to *Sands v. J.I. Case Co.*, 239 Ill. App. 3d 19, 25 (1992), for the proposition that a settling plaintiff in contribution is not required to prove its own liability to the injured party with whom it has settled, but it merely need present the fact finder with a factual basis showing that liability was reasonably anticipated. Plaintiffs appear to equate pleading the amounts each paid in settlement with proving their own liability to the injured party with whom they have settled. *Sands* suggests no such equivalency; rather, it distinguishes itself from *Victory Memorial* on the basis that *Victory Memorial* required proof of the amount paid in settlement, while *Sands* required a showing that liability to the injured party was reasonably anticipated in order to demonstrate the plaintiff's status as a tortfeasor for the purposes of the Act. *Sands*, 239 Ill. App. 3d at 25. Plaintiffs' reliance on *Sands*, therefore, is misplaced.

Plaintiffs also cite to *Hall v. Archer-Daniels-Midland Co.*, 122 Ill. 2d 448, 458-59 (1988), apparently for the proposition that the failure of a plaintiff in contribution to allocate settlement monies between separate claims will not preclude the contribution claim. Plaintiffs seem to suggest that, analogously, the failure to allocate the amount paid to the injured party among the plaintiffs should be treated the same way as the failure to allocate the amount paid among separate claims. We disagree. *Hall* had a single plaintiff in contribution who paid the injured party in settlement of two claims, one for compensation, and the other for punitive damages. *Hall*, 122 Ill. 2d at 450. In rejecting the argument of the defendants in contribution, the court noted that the plaintiff in contribution had established the total amount of its liability to the injured party, even though there were

separate theories of recovery. *Hall*, 122 Ill. 2d at 459. In addition, the court noted that the Act did not expressly require that a plaintiff allocate the settlement proceeds between alternative theories of recovery. *Hall*, 122 Ill. 2d at 459. The court held that the failure to allocate the settlement monies would be examined for good faith; if the settlement was made in good faith and not unfairly to pass on punitive damages to a defendant for which the plaintiff would not otherwise be able to obtain contribution, then the failure to allocate the monies would not bar the contribution claim. *Hall*, 122 Ill. 2d at 460. Here, by contrast, there is no issue of good or bad faith in settling the Strains' claim, or of improperly passing on punitive damages to defendants. Moreover, the failure to allocate was not in regard to several theories of recovery, but was in regard to the plaintiffs in contribution. While there is no express requirement in the Act to allocate settlement proceeds to different claims, there is an express requirement for plaintiffs in contribution to allocate the settlement to the injured party between the various plaintiffs in contribution. *Victory Memorial*, 158 Ill. App. 3d at 935. Therefore, we find that *Hall* is distinguishable. Accordingly, we hold that the trial court correctly dismissed plaintiffs' third amended complaint.

Next, plaintiffs argue that the trial court erroneously relied on the economic loss rule (see *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69 (1982)) to conclude that plaintiffs were not able to plead the existence of damages. Ordinarily, we would not need to consider plaintiffs' contentions, because our conclusion that plaintiffs did not properly plead a claim for contribution would sufficiently justify the trial court's determination. However, because plaintiffs are also complaining that the trial court abused its discretion in not allowing them to file an amended complaint, and because it is easy to envision that in some future pleading, plaintiffs would be able to allocate between them the amounts paid in settlement to the Strains, whether the trial court's ruling is also supported by the economic loss doctrine could have a significant bearing on our resolution of whether the trial court abused its discretion in denying plaintiffs' leave to amend. If plaintiffs are able to plead the existence of cognizable damages, then it is readily conceivable that they could easily correct the flaws identified in their third amended complaint. Thus, we must consider plaintiffs' contention regarding the economic loss doctrine.

■ Plaintiffs contend that the trial court erred in holding that their damages were barred by the economic loss rule. Briefly stated, recovery for solely economic losses in relation to a product may not be had upon a tort theory of negligence. *Moorman*, 91 Ill. 2d at 85; *American Xyrofin, Inc. v. Allis-Chalmers Corp.*, 230 Ill. App. 3d 662,

669 (1992). The rationale for the economic loss rule is that the manufacturer of the product should not be held liable for downstream losses caused by the product failing to meet the purchaser's specific business expectations. *American Xyrofin*, 230 Ill. App. 3d at 669. "Economic loss" has been defined as damages for inadequate value, costs of repair and replacement of the defective product, or the consequent loss of profits, as well as the diminution of value of the product due to its inferior quality. *Redarowicz v. Ohlendorf*, 92 Ill. 2d 171, 177 (1982). The economic loss rule is not without exceptions. It will not be applied in three circumstances: (1) where the plaintiff has sustained personal injury or property damage resulting from a sudden or dangerous occurrence; (2) where the plaintiff's damages are proximately caused by the defendant's intentional, false representation; and (3) where the plaintiff's damages are proximately caused by the defendant's negligent misrepresentation where the defendant is in the business of supplying information to guide others in their business transactions. *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 199 (1997).

■ Here, the trial court dismissed plaintiffs' third amended complaint based on the application of the economic loss rule. Plaintiffs argue that the economic loss rule does not apply to their circumstances. They argue that the Strains were private citizens without the expectation of commercial benefit accruing from the purchase of their residence. Plaintiffs argue that the Strains experienced a sudden and calamitous event, effectively causing the loss of their house as well as the loss of a large amount of personal property. Because the Strains experienced property damage in addition to the loss of the house as a result of the mold, plaintiffs argue that the economic loss rule does not operate to bar their claim. We agree in part with plaintiffs' contention.

*Redarowicz* and *Chicago Flood* settled the question of whether the economic loss rule will bar recovery in tort for the loss of a plaintiff's house or property. In *Redarowicz*, the plaintiff purchased a house from the original owners about a year after the house had been completed by the builder. The plaintiff noticed that the chimney and adjoining wall were beginning to pull away from the rest of the house. The plaintiff sued the builder and sought recovery in tort for the repair and replacement of the defectively constructed chimney. *Redarowicz*, 92 Ill. 2d at 175-76. The court held that the plaintiff could not recover those damages in a defective construction case because they were precisely the type of damages precluded by the economic loss rule. *Redarowicz*, 92 Ill. 2d at 178. The court stated:

"This is not a case where defective construction created a hazard

that resulted in a member of the plaintiff's family being struck by a falling brick from the chimney. \*\*\* The plaintiff is seeking damages for the costs of replacement and repair of the defective chimney, adjoining wall and patio. While the commercial expectations of this buyer have not been met by the builder, the only danger to the plaintiff is that he would be forced to incur additional expenses for living conditions that were less than what was bargained for." *Redarowicz*, 92 Ill. 2d at 178.

In *Chicago Flood*, the plaintiffs sued the City of Chicago for damages incurred when the city's freight tunnel network was flooded following damage to one of the tunnels after wood pilings in the Chicago River had been replaced, but not in the location specified by the city. *Chicago Flood*, 176 Ill. 2d at 184-85. The court held that "those plaintiffs who did not incur personal injury or property damage may not recover solely economic losses." *Chicago Flood*, 176 Ill. 2d at 201. The court cautioned, however, that the economic loss rule applied "even to plaintiffs who have incurred physical damage to their property if the damage is caused by disappointed commercial expectations, gradual deterioration, internal breakage, or other nonaccidental causes, rather than a dangerous event." *Chicago Flood*, 176 Ill. 2d at 200-01. The court also noted, with regard to destroyed inventory, that these damages did not run afoul of the economic loss rule because the plaintiffs were not seeking "damages for the loss of continuous electrical service, which is a disappointed commercial expectation," but were seeking "damages for property loss, in the form of lost perishable inventory, as a result of a tortious event." *Chicago Flood*, 176 Ill. 2d at 202. The court held that "these losses fall outside the definition of economic loss and are recoverable in tort." *Chicago Flood*, 176 Ill. 2d at 202.

*Redarowicz* and *Chicago Flood* require that damages beyond the disappointed commercial expectations be alleged. *Redarowicz* held that repair and replacement damages arising from defective construction were barred by the economic loss rule. *Redarowicz*, 92 Ill. 2d at 178. *Chicago Flood* elaborated the rule to bar recovery of economic losses, but allowed for the recovery of property damages apart from those of the damaged structure. *Chicago Flood*, 176 Ill. 2d at 202. Thus, here, plaintiffs cannot recover contribution for damages accruing from the loss of the Strains' house, as that is a classic economic loss. See *Redarowicz*, 92 Ill. 2d at 178. However, plaintiffs can recover contribution for the losses to the Strains' personal property. Therefore, the trial court correctly dismissed that portion of the third amended complaint seeking contribution based on the loss of the house, but should not have dismissed that part of plaintiffs' claim seeking

contribution based on the personal property damages incurred by the Strains.

This does not fully resolve the issue. Defendants contend that the mold grew over a lengthy period of time. This, according to defendants, means that the losses occurred as a result of a gradual deterioration and not a sudden and calamitous event. As a result, defendants conclude that the losses do not fall under the exception to the economic loss rule for personal injury and property damage resulting from a sudden or dangerous occurrence. We disagree.

While the growth of the mold and bacteria occurred gradually, it is still a sudden and calamitous event for purposes of analyzing the application of the economic loss rule. As this court has stated:

"Damages which are the proximate result of a sudden and calamitous occurrence that causes harm to other property are compensable in tort. [Citations.] The type of harm attendant to a sudden and calamitous event does not flow from disappointed commercial expectations; rather, it arises from '[h]azards peripheral to the product's [intended] function.' [Citation.] When characterizing an event as sudden and calamitous the focus is upon 'the suddenness of the *occurrence of an event*—the point when the injury occurs ***—where such occurrence causes personal injury or damage to property external to the defective product which exposes a party to an unreasonable risk of injury to himself or his property, rather than the suddenness or length of time within which the *defect or cause of the occurrence* develops *** and manifests itself in the sudden and calamitous occurrence.' (Emphasis in original.) [Citation.]" *American Xyrofin*, 230 Ill. App. 3d at 671.

The circumstances of this case qualify as a sudden and calamitous event. The mold and bacterial infestation grew gradually, but its manifestation was sudden and calamitous, damaging the Strains' personal property and requiring them to flee their house or experience the likelihood of personal injury. Properly viewed from the point of injury, and not from the development of the mold and bacterial infestation, the occurrence was sufficiently sudden and calamitous to place it under the exception to the economic loss rule for property damage resulting from a sudden or dangerous occurrence.

Defendants also complain that the allegations were conclusory and not factual. Defendants argue that the complaint sets out only a passing reference that abnormally high levels of mold and bacteria caused extensive damage to the personal effects of the Strains. Defendants argue that this is insufficient to allow the complaint to proceed. We agree. Plaintiffs' allegations are both conclusory and cursory. They do not allege sufficient facts to demonstrate that the economic loss rule should not apply. That said, however, this is an easily remedied defect.

We note that a complaint should not be dismissed with prejudice unless it is apparent that no set of facts can be proved under the complaint that would entitle the plaintiff to relief. *Smith v. Central Illinois Regional Airport*, 207 Ill. 2d 578, 584-85 (2003). We also noted above that plaintiffs' failure to properly allege a contribution claim was due to their failure to allocate the amounts paid in settlement among plaintiffs and other entities identified in the settlement. This, too, is an easily remedied defect. Thus, we conclude that, while dismissal of the third amended complaint was proper for all of the reasons identified above, it should not have been dismissed with prejudice, because plaintiffs have demonstrated that they should be able to allege sufficient facts to entitle them to contribution from defendants for their *pro rata* share of the damages stemming from the Strains' personal property losses. In all other respects, however, we find that the trial court's dismissal with prejudice of the third amended complaint was proper.

■ The resolution of the foregoing does not entirely obviate our consideration of plaintiffs' remaining contention on appeal. Plaintiffs contend that the trial court abused its discretion in refusing to allow them leave to file a fourth amended complaint. Based on the posture of this case and our resolution of the issues raised regarding the third amended complaint, we now see this as presenting two separate questions. First, did the trial court abuse its discretion in refusing to allow any amendment of the complaint? Where a cause of action can be stated, a trial court abuses its discretion if it refuses to allow the plaintiff to amend his complaint. *Droen v. Wechsler*, 271 Ill. App. 3d 332, 335 (1995). Moreover, the trial court should exercise its discretion liberally in favor of allowing amendments, and any doubts should be resolved in favor of allowing the amendment, if the ends of justice will be furthered by allowing the plaintiff to file an amended complaint. *Droen*, 271 Ill. App. 3d at 335. As we noted above, the defects in the third amended complaint are easily remedied. Therefore, we hold that the trial court abused its discretion in dismissing the third amended complaint with prejudice. It should have allowed plaintiffs another opportunity to amend their complaint.

The second question is, did the trial court properly refuse to allow plaintiffs to file their proposed fourth amended complaint? In determining whether to allow an amended complaint, the trial court is to consider four factors: (1) whether the proposed amendment would cure the defective pleading, (2) whether other parties would be prejudiced or surprised by the proposed amended complaint, (3) whether the plaintiff had previous opportunities to amend the complaint, and (4) whether the proposed amendment is timely. *Loyola*

*Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992). We consider each of the factors of the *Loyola Academy* test in turn.

First, our review of the proposed fourth amended complaint shows that it continues to suffer from the defect identified in the third amended complaint, namely, plaintiffs still do not allocate among the settling parties the amounts paid in settlement of the Strains' personal property claims. In an attempt to cure this defect, plaintiffs alleged that the parties identified in the 2002 settlement release are all the same entity. This claim is belied by the text of the 2002 settlement release itself, which identifies each of the parties paying the settlement to the Strains as a distinct corporate entity. Because the allegation in plaintiffs' proposed fourth amended complaint is contradicted by the 2002 settlement release, we do not accept the allegation as true. See *Rogalla v. Christie Clinic, P.C.*, 341 Ill. App. 3d 410, 413 (2003). In addition, plaintiffs still attempt to recover contribution for the house, which we have held above to be prohibited by the economic loss rule. Thus, the proposed amendment does not cure the defects already identified.

Second, the proposed fourth amended complaint seeks to add a claim sounding in breach of contract. While plaintiffs had earlier pleaded breach of contract, the earlier claims were based on defendants' failures to obtain insurance. This time, plaintiffs allege that the breaches occurred as a result of defendants' failures to properly perform their work. In other words, plaintiffs are adding a new theory of recovery to the case, the breach of the subcontract with each defendant. This amendment was sought in the procedural posture that the trial court had already entered final judgment by dismissing the third amended complaint with prejudice. As the court's discretion to allow an amendment is curtailed following a final judgment (*Vanderplow v. Krych*, 332 Ill. App. 3d 51, 58 (2002)), we do not believe that the trial court's refusal to allow the amended complaint after it had dismissed the cause with prejudice was an abuse of discretion.

The third factor slightly favors denying plaintiffs leave to amend because plaintiffs have had opportunities to amend their complaint. The original complaint was filed by the Strains. The first amended complaint recast the original complaint by substituting plaintiffs in place of the Strains, and added new parties defendant. The second amended complaint added new claims and was dismissed by motion. The third amended complaint attempted to correct the deficiencies identified in the second amended complaint. Thus, plaintiffs have had two opportunities to amend their complaint. Therefore, the third factor weighs slightly against allowing an amendment. The last factor is neutral. As noted above, we determined that plaintiffs' postjudgment

motion to reinstate and for leave to amend was timely. Thus, the third and fourth factors are largely inconsequential to the outcome of the four-factor test identified in *Loyola Academy*. Because the first two factors weigh so strongly against allowing the complaint to be amended, we find that the trial court did not abuse its discretion in refusing the proposed fourth amended complaint.

To sum up, then, we find that the trial court properly dismissed with prejudice plaintiffs' contribution claim arising from the damage to the Strains' house, but erred in dismissing with prejudice plaintiffs' contribution claim arising from damage to the Strains' personal property. That portion alone of the third amended complaint should have been dismissed without prejudice. We also find that the trial court erred in denying plaintiffs the opportunity to file an amended complaint but that it properly refused the tendered fourth amended complaint. Therefore, we order the trial court to allow plaintiffs to file a different fourth amended complaint consistent with our opinion herein.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed in part and reversed in part, and the cause is remanded with directions.

Affirmed in part and reversed in part; cause remanded with directions.

CALLUM and GILLERAN JOHNSON, JJ., concur.